**UNITED STATES of America, Plaintiff,**

v.

**Howard SCOTT, Vernita Scott, Robert Christians, Retha Christians, John Farrell, Laureen Farrell, Dennis Baxter, Sue N. Baxter, Palmer Cotten, Alice Cotten, Harry Bachman, Anna E. Bachman, Paul C. Anschutz, Helen A. Anschutz, Clarence H. Krug, Bryan L. Dinkel, Kay Dinkel, Clarence Fowler, Leonard Fowler, Melvina C. Oswald, Michael Steponik, Virginia (Faith) Steponik, Stella Nesbitt, Robert L. Craig, Mary Craig, Austin L. Covalt, and Betty Covalt, Defendants.**

**Civ. A. No. 90–1374–FGT.**

United States District Court, D. Kansas.

Dec. 8, 1992.

matter of law in favor of defendants now before

the onset of the second phase of trial.

Emily B. Metzger, Office of U.S. Atty., Wichita, KS, Myron S. Lehtman, Joseph D. Rich, Eileen Penner, Housing and Civ. Enforcement Section, Dept. of Justice, Civ. Rights Div., Washington, DC, for plaintiff.

Caleb Boone, Hays, KS, Robert L. Earnest, John C. Woelk, Russell, KS, for defendants.

## OPINION AND ORDER

THEIS, District Judge.

The United States brought this action on behalf of Donald and Patricia Haberer, sellers of a residential property, alleging violations of the Fair Housing Act, 42 U.S.C.

§ 3601 et seq. The United States alleged that the defendants, who are homeowners in the Larmer Addition of the City of Russell, Kansas, violated several provisions of the Fair Housing Act by actions they took in 1989. The United States alleged that these actions, which included the filing of a lawsuit in the District Court of Russell County, Kansas (*Scott, et al. v. Haberer,* C.A. No. 89–C–103), interfered with the Haberers' right to sell their home to Developmental Services of Northwest Kansas (DSNWK), an organization which operates group homes for physically and mentally handicapped individuals.

In a previous opinion and order, the court granted the United States' motion for partial summary judgment on the issue of liability. 788 F.Supp. 1555 (D.Kan.1992). In that order, the court found that the Haberers were "aggrieved persons" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(i)(1). The court held that by attempting to block the sale of the Haberer home to DSNWK because of the handicaps of the prospective residents, the defendants had violated several provisions of the Fair Housing Act. *See* 788 F.Supp. at 1562. The court will not repeat the facts found nor the discussion of the general principles of law contained in the previous opinion, but incorporates them by reference here.

This matter was tried to the court on November 23, 1992, on the issue of the appropriate relief for defendants' violations of the Fair Housing Act. Prior to trial, the United States settled its claims on behalf of the Haberers with four of the defendants, Kenneth Lahmann, Olive Davisson, Dean Zimmerman and Helen Zimmerman. The names of the remaining twenty-seven (27) defendants are reflected in the case caption. The limited issues for resolution by the court are the amount of actual damages suffered by the Haberers, the amount of punitive damages, if any, to be assessed against the defendants, and the propriety of injunctive relief against further violations of the Fair Housing Act. After considering the matters presented at trial, the court now makes the following findings of fact and conclusions of law.

## I. Damages

In a civil enforcement action brought by the United States on behalf of aggrieved individuals such as the Haberers, the court may grant the same relief which could be granted in a private enforcement action. That relief shall accrue to the aggrieved individuals. *See* 42 U.S.C. § 3612(*o*)(3). That relief includes actual and punitive damages. *Id.* § 3613(c)(1).

### A. *Actual Damages*

The court finds by a preponderance of the evidence, after hearing the witnesses and evaluating their credibility and after examining the documentary exhibits in evidence, that the following items of actual damages have been proved:

| | | |
|---|---|---|
| Additional Interest on Home Mortgage | $223.35 | (Exh. 1) |
| Additional Real Estate Taxes | 227.70 | (Exh. 4) |
| Lost Interest Income | 704.11 | (Exh. 5) |
| Legal Fees Incurred | 919.00 | (stipulated) |
| Miscellaneous Legal Costs | 137.04 | (stipulated) |
| Time Spent of Assertion of Rights | | |
| Donald Haberer | 750.00 | (Exh. 10) |
| Patricia Haberer | 370.88 | (Exh. 13) |

Additionally, Donald Haberer claimed a crop loss estimated by him to have been in the amount of $4,200.00 arising from an alleged diminution in wheat crop yield. Mr. Haberer testified that the time he expended asserting his legal rights in the state court action in 1989 caused him to be unable to timely perform several agricultural tasks necessary to the production of winter wheat on his land. His testimony was not specific as to how any omitted or delayed actions lessened production or how weather conditions in the area could have affected yields. He presented no evidence of comparable yields of neighboring farms. Mr. Haberer candidly admitted that his figure was an estimate only. This claimed item of damage was called into question by the testimony of certain defendants who also raised winter wheat in the area. The court finds this item of claimed damages not to be supported by a preponderance of the evidence.

The United States additionally seeks compensatory damages for emotional distress and humiliation suffered by the Ha-

berers. Mr. Haberer's testimony revealed that he has had extensive business and political experience. He had been engaged as a real estate broker and had been a member of the Russell City Council. The evidence showed that he had been elected a County Commissioner for Russell County, Kansas in the recent 1992 election. This matter indicates to the court that Mr. Haberer suffered little public opprobrium from the sale of his home to DSNWK for use as a group home for the mentally and physically handicapped. In sum, his testimony as to emotional distress did not impress the court.

On the other hand, the testimony of Patricia Haberer was specific as to instances of cool treatment or social shunning by some neighbors and acquaintances. Likewise, her background as a nurse, her special interest in the welfare of the handicapped, her experiences with handicapped relatives, and her demeanor as a sincere and sensitive person, made her testimony most credible. The court finds a damage award of $2,000.00 a reasonable amount for the emotional distress of the Haberers, particularly Mrs. Haberer.

### B. *Punitive Damages*

The remaining item of damages which the court must consider is whether punitive damages should be awarded. The court has previously found that the defendants engaged in intentional handicap discrimination by attempting to enforce a neutral restrictive covenant for the purpose of denying equal housing opportunities to disabled individuals. *See* 788 F.Supp. at 1562.

Punitive damages are appropriate when the defendants' conduct is motivated by evil intent or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). The evidence before the court indicates that the defendants demonstrated at least a reckless indifference to the federally protected rights of the Haberers and the handicapped. The defendants (through their attorney/agent) were aware of the Fair Housing Act and chose to pursue their state court action notwithstanding the prohibitions of that Act. Punitive damages are thus appropriate.

The court does not find that the defendants acted out of evil motive. Here, there was no evidence that the conduct of the defendants as a group or individually was motivated by malevolence directed at either the Haberers or the handicapped individuals who were to inhabit the house. Rather, the evidence would lead a fact finder to believe that the defendants took the actions they did out of ignorance, misinformation, subjective prejudice, or by financial interests prompted by a fear of a decrease in the value of their own homes.

The court believes a modest award of punitive damages should be awarded against the defendants as a deterrence to each of them. An award of punitive damages will send a message to the defendants and others in the public generally that discriminatory conduct such as occurred in the present case is not acceptable under the Fair Housing Act. The court believes that an award of $2,700.00 would be reasonable under the facts and circumstances of this case.

### C. *Summary of Damages*

The defendants shall be jointly and severally liable to pay Donald and Patricia Haberer the following damages:

| | |
|---|---|
| Additional Interest on Home Mortgage | $ 223.35 |
| Additional Real Estate Taxes | 227.70 |
| Lost Interest Income | 704.11 |
| Legal Fees Incurred | 919.00 |
| Miscellaneous Legal Costs | 137.04 |
| Time Spent of Assertion of Rights | |
|     Donald Haberer | 750.00 |
|     Patricia Haberer | 370.88 |
| Emotional Distress | 2,000.00 |
| Punitive Damages | 2,700.00 |
| **TOTAL:** | 8,032.08 |

The Haberers have already received a total of $875.00 from the four defendants who settled in August 1992. That amount is to be deducted from the total damages awarded to the Haberers from the remaining defendants ($8,032.08 — $875.00 = $7,157.08).

## II. Injunctive Relief

█ In a civil enforcement action brought by the United States, the court may grant, "as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such [discriminatory housing] practice or ordering such affirmative action as may be appropriate.)" 42 U.S.C. § 3613(c)(1); *see id.* § 3612(o)(3). The United States is entitled to equitable relief based on the liability of defendant for past violations of the Fair Housing Act and the vestiges of discrimination that remain. Defendants have failed to demonstrate that there is no danger of current or future violations. *See United States v. DiMucci,* 879 F.2d 1488 (7th Cir.1989). It is appropriate to preclude the defendants from seeking any further judicial enforcement of the Larmer Addition restrictive covenants. *See Casa Marie, Inc. v. Superior Court of Puerto Rico,* 752 F.Supp. 1152, 1171 (D.P.R.1990) (enjoining state court proceedings). The court shall order injunctive relief as set forth below.[1]

IT IS BY THE COURT THEREFORE ORDERED defendants shall be jointly and severally liable to pay Donald and Patricia Haberer damages in the amount of $7,157.08.

IT IS FURTHER ORDERED that the following equitable relief shall be entered:

It is hereby ordered, adjudged, and decreed that the defendants and each of them, their successors, and all other persons in active concert or participation with them are hereby permanently enjoined from:

1. Seeking any further judicial enforcement against the Haberers of the Larmer Addition covenants, contracts, and restrictions regarding the dwelling at 1212 Krug Street, Russell, Kansas, based upon the sale of that dwelling by the Haberers to DSNWK for use as a group home for the developmentally disabled. Under this provision, the defendants are precluded from taking any appeals in the case of *Scott v. Haberer,* C.A. 89–C–103 (Dist.Ct. Russell, Kansas), pertaining to the alleged violation by the Haberers of the Larmer Addition restrictive covenants based on the sale of their home to DSNWK. If any such appeals are pending on the date this order is entered, the defendants herein shall move to dismiss them within ten (10) days of that date;

2. Interfering in any way with DSNWK's operation of the group home described above; and

3. Making unavailable or denying a dwelling in the Larmer Addition of the City of Russell, Kansas to, or discriminating against, any seller, buyer, or renter because of a handicap of—

(a) that buyer or renter;

(b) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or

(c) any person associated with that buyer or renter.

The definition of "handicap" set out in 42 U.S.C. § 3602(h) shall apply to this order.

This order shall be in effect for three (3) years from the date of its entry. The court shall retain jurisdiction of this action for purposes of enforcing this order. The parties and persons bound by this order shall endeavor to resolve informally any differences regarding interpretation and compliance with this order prior to bringing such matters to the court for resolution. At any time after three (3) years from the date of entry of this order, the defendants may move for dismissal of this case. Dismissal shall be granted unless, no later than thirty (30) days after receipt of the defendants' motion, the United States or other plaintiff objects. If an objection is received, the court shall hold a hearing on the dismissal motion, and the burden shall be on the United States to demonstrate why this or-

1. The United States, on behalf of the aggrieved parties, has suggested that each defendant file a personal statement under oath concerning knowledge of and fealty to this order. Because of the contempt power of this court, the absence of individual malevolent intent toward the Haberers or the handicapped, and the award of punitive damages against the defendants, the court declines to include language requiring individual obeisance to this order.

der should not be terminated. If the United States fails to meet its burden, this order shall terminate forthwith and the case shall be dismissed with prejudice.