John **LELSZ, et al., Individually and on behalf of all others similarly situated, Plaintiff**

v.

John J. **KAVANAGH, M.D., et al., Defendant.**

Civ. A. No. 3–85–2462–H.

United States District Court, N.D. Texas, Dallas Division.

Nov. 2, 1995.

David C. Shaw Trowbridge Ide Courtney & Mansfield, Hartford, CT, for plaintiff.

Paul Edward Coggins, Meadows Owens Collier Reed Cousins & Blau, Dallas, TX, Nancy Ann Trease, Attorney General of Texas, Austin, TX, Julian Michael Joplin, Strasburger & Price, Dallas, TX, David Ferleger, Philadelphia, PA, Nancy Scherer, Vogt & Scherer, Austin, TX, and Paul M. Smith, and Alan Untereiner, Onek Klein & Farr, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

On October 13, 1995, the Court held a hearing on whether to dismiss a longstanding lawsuit between the Plaintiff class; the State Defendants, who are individual representatives of the Texas Department of Mental Health and Mental Retardation ("TXMHMR"); and Intervenor Advocacy Inc.

### I. HISTORY OF THE CASE

Twenty-one years ago, on November 27, 1974, the named plaintiffs filed this suit challenging both the adequacy of conditions and care at three large institutions for the mentally retarded and the absence of community-based alternatives. In 1981 the case was certified as a class action under Federal Rule of Civil Procedure 23(b)(2). For a detailed history of this lawsuit, *see Lelsz v. Kavanagh,* 783 F.Supp. 286 (N.D.Tex.1991), *aff'd,* 983 F.2d 1061 (5th Cir.1993).

This case has been settled three times. The first settlement, the 1983 Resolution and Settlement, committed the State to improving conditions in the state schools and to providing community placements. Compliance issues arose and in 1987 Defendants were held in contempt of court. The parties then reached a second settlement, the 1987 Implementation Agreement, which focused both on improving conditions in the state's schools and on securing quality assurance protections for class members living in the

community. Compliance issues arose again, however, and on the eve of a contempt trial in 1991, the parties reached a third agreement.

This Settlement Agreement ("Settlement Agreement"), approved by the Court on December 30, 1991, achieved for Plaintiffs "two of the central objectives sought in their complaint: the closure of large institutions that house mentally retarded individuals and the creation of additional, more intimate, community based programs." *Lelsz v. Kavanagh*, 783 F.Supp. at 290. "The principal goal of the Settlement Agreement [was] to improve the configuration of services for the mentally retarded such that the services offered are more narrowly tailored to the individual needs and abilities of each mentally retarded client." *Id.*

To accomplish the Settlement Agreement's aims, Defendants were required to create and implement closure plans for two state schools, Settlement Agreement at Paragraph Six, to make community placements, Settlement Agreement at Paragraph Eight, and to accomplish other specific tasks.[1] The parties have stipulated to Defendants' compliance

with the Settlement Agreement and to Defendants' intentions to continue their efforts.[2] Pretrial Order, Stipulated Facts; Defendants' Exhibits 1–23 (detailing compliance.)

The Settlement Agreement obligates the parties to seek dismissal with prejudice at the time the first of two state school closures occurs, as provided in Paragraph Eleven of the Settlement Agreement.[3]

Fort Worth State School closed on August 15, 1995. Pretrial Order filed November 1, 1995, Stipulated Facts, ¶ 1. *See,* also, testimony of Dr. Linda O'Neall, Expert Consultant, transcript ("Tr.") at 83; testimony of Jaylon Fincannon, Director of State Operations for TXMHMR, Tr. 25.

## II. ANALYSIS

Since the parties have stipulated that Defendants have complied with the Settlement Agreement, the central issue before the Court is whether the Court should retain jurisdiction over the case after dismissal.

Plaintiffs believe the Settlement Agreement provides for two continuing obligations. First, Plaintiffs contend that Paragraph Six

---

1. The specific tasks included passing legislation to identify two state schools for closure; developing and implementing plans for these closures; annually placing 300 persons from state schools to community placements, at least 95% of which were to be in homes of no more than six residents; continuing individualized planning, case management services, standards for community programs, and monitoring by the state; permitting placement appeals; continuing ACDD accreditation and ICF–MR certification at four named state schools; and establishing an independent authority to investigate alleged abuse and neglect. Settlement Agreement ¶¶ 1–11.

2.

    1. Fort Worth State School closed on August 15, 1995.
    2. Defendants complied with the Settlement Agreement requirements for placement of approximately 300 persons per year, since the 1991 settlement, into community placements from state schools.
    3. Defendants complied with the Settlement Agreement requirement that 95% of the community placements from state schools, since the 1991 settlement, be to residences of six (6) beds or less.
    4. Defendants intend to substantially continue rules, policies, and quality assurance mechanisms, including case management services, community standards and monitoring, to pro-

vide the quality of services provided to persons placed from state facilities. These rules, policies, and mechanisms may be modified as defendants continually improve these processes.
    5. Defendants intend to close Travis State School during 1997 and currently are aware of no obstacle to achieving that closure. The closure plans do not include use of Travis State School for residential services for people with retardation.
    6. Defendants do not intend to substantially reduce the protections embodied in the individual habilitation plans, quality assurance, case management and monitoring provisions of defendants' rules and policies.
Pretrial Order, Stipulated Facts.

3.    Within seven (7) days of the occurrence of the following two events—(1) the closure of the first state school as defined herein and (2) the placement of individuals in the community in a number equal to 300 placements a year from the date of the execution of this Agreement to the date of the closure of the first state school (but no fewer than 600 placements in total)— the Parties will execute and cause to be filed with the Court the joint motion to dismiss with prejudice the Action which is attached hereto as Exhibit C. At least 95% of these placements will be into homes of no more than 6 residents. Settlement Agreement, ¶ 11.

of the Settlement Agreement requires the final closure of a second state school, Travis State School.[4] Plaintiffs' October 6, 1995 Brief on Dismissal at 9; Tr. 121. Second, Plaintiffs argue that the second sentence of Paragraph Eight of the Settlement Agreement provides ongoing protections for the class in the form of continuing quality assurance obligations on the part of Defendants.[5] Plaintiffs' Brief on Dismissal at 10; Tr. 121. Plaintiffs therefore urge the Court to adopt one or more of the following three approaches to enforce these continuing obligations: (1) express conditions built into the dismissal order; (2) recognition of the Settlement Agreement and its remaining obligations as a contract enforceable in this Court; and/or (3) express recognition of Rule 60(b)(5)'s applicability. Plaintiffs' Proposed Findings at 9.

Defendants, on the other hand, stress that the Settlement Agreement does not impose any continuing obligations on the part of the State, but rather is a final end to the lawsuit because Defendants have fully complied with the Settlement Agreement and Defendants bargained for "clear-cut" dismissal with prejudice. Tr. 129.

■ It has been generally accepted that a dismissal with prejudice constitutes a final judgment on the merits that bars a later suit on the same cause of action. *See Kaspar Wire Works v. Leco Engineering & Machine, Inc.*, 575 F.2d 530, 534 (5th Cir.1978). "Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties." *Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir.1964). Thus, the concept of continuing obligations would be inconsistent with the concept of dismissal with prejudice.

Recent case law, however, suggests that a district court *could* dismiss a case with prejudice and still retain jurisdiction by incorporating the settlement agreement into the order. *See Kokkonen v. Guardian Life Ins. Co. of America*, —— U.S. ——, ——, 114 S.Ct. 1673, 1677, 128 L.Ed.2d 391 (1994); *Langley v. Jackson State University*, 14 F.3d 1070, 1074 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 61, 130 L.Ed.2d 19 (1994).

■ The Supreme Court in *Kokkonen* stated that where a court (1) dismisses an action with prejudice because of a settlement agreement, (2) neither approves of nor incorporates the settlement agreement in its decree or order, and (3) does not indicate an intention to retain jurisdiction, an action to enforce the settlement agreement requires federal jurisdiction independent of the action that was settled. —— U.S. at ——, 114 S.Ct. at 1677. The *Kokkonen* Court then recognized that when the dismissal order includes a requirement of compliance with the settlement or retains jurisdiction over the settlement, "a breach of the [settlement] agreement would be a violation of the [dismissal] order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.* But, "[t]he judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order." *Id.*

■ In *Langley, supra*, the Fifth Circuit also recognized that a district court could dismiss a case while retaining jurisdiction if the court expressly incorporated the settlement agreement into its dismissal with prejudice. 14 F.3d at 1075.

The question, then, is not whether the Court can dismiss with prejudice and retain jurisdiction, but whether the Court *should.*

---

4.   Pursuant to the requirements of the legislation described in paragraph one (1) above, and if the Task Force recommends closure of two state schools which recommendations are not rejected by the Governor, the Defendants will develop plans for closure of the two state schools for the mentally retarded which are selected for closure and will close two state schools in accordance with the legislation described in paragraph one (1) above and the plans.
Settlement Agreement, ¶ 6.

5.   Consistent with the Department's Strategic Plan, the Department will place in community programs approximately 300 individuals a year. (Inclusive of those placed from the schools to be closed). Placements from the schools and admissions to the schools will continue to be made in accordance with the individual habilitation plan, and the rules, policies and quality assurance mechanisms of the Department, including case management services, community standards and monitoring.
Settlement Agreement, ¶ 8.

The Court concludes, based on the Stipulations, the terms of the Settlement Agreement, and the testimony at the hearing, that this case should be dismissed with prejudice and that the Court should retain jurisdiction only to the extent specifically provided by this Order.

The parties did not bargain for dismissal with continuing jurisdiction. The language of the Settlement Agreement contemplates dismissal without ongoing obligations under that agreement. The introduction to the Settlement Agreement states that the Parties "enter this agreement in order to resolve all disputes among them which were or could have been raised in the Action . . . ." Clearly, the Settlement Agreement was meant to be a final resolution of all issues. The parties could have agreed on continuing jurisdiction during the 1991 settlement negotiations, but did not do so.

Further, assuming *arguendo* that the Settlement Agreement did provide for ongoing obligations, Defendants are committed to meeting those obligations. Defendants have testified, and the Court relies on that testimony, that Travis State School will close. Testimony of Fincannon, Tr. 26–28, addressing the imminent closure of Travis State School and the economic infeasibility of reopening; testimony of Dr. O'Neall, Tr. 84, that Travis State School is "virtually" closed. Defendants have also testified, and again the Court relies on that testimony, that they intend to fulfill the provisions of Paragraph Eight of the Settlement Agreement. Testimony of Fincannon, Tr. 43–45; testimony of Ann Utley, Chairman of the Board of TXMHMR, Tr. 77–78.[6]

Finally, the Court has previously accepted the principle that this case must come to a close. As the Court stated four years ago, "[i]t is not the proper role of the Court . . . to exercise permanent judicial control over the state schools. . . . Instead, this suit should be brought to a suitable conclusion." 783 F.Supp. at 299. Retention of jurisdiction to enforce the Settlement Agreement, specifically its Paragraph Eight, as sought by Plaintiffs, would entail permanent oversight of the case by the Court.

## III. JOHN LELSZ, JR.

The Court, however, is obliged to ensure that Defendants never dismiss John Lelsz, Jr. from state services. On February 28, 1987, the Court entered an order to that effect and that order will continue in force. The parties agree that the furlough of John Lelsz, Jr. from Richmond State School to his new community placement does not constitute a discharge. Pretrial Order, Stipulated Facts ¶ 7. Further, Defendants have stated their commitment to providing services to John Lelsz, Jr. for so long as he continues to want them. *Id.* at ¶ 9. Finally, Defendants agreed in 1991 to continuing services for John Lelsz, Jr.[7]

## IV. CONCLUSION

In reaching its decision, the Court has given special weight to the testimony of Dr. O'Neall, the Expert Consultant who has diligently monitored the progress of this litigation for over a decade. Dr. O'Neall recommends that the Court terminate its supervision of the case. The Court was also impressed with the testimony of Ms. Deborah Hooks, a former resident of Fort Worth State School, who is profoundly retarded. Ms. Hooks' dramatic and moving testimony highlighted the success of Defendants' community placement program as she described how much her life had improved since she had moved to her own apartment. Tr. 72.

Spending by the State of Texas on community retardation services has substantially increased. Dr. David Braddock, *The State of the States in Developmental Disabilities* 297 (1995). Services for the mentally retarded in Texas have improved significantly in recent years. According to Dr. O'Neall, Texas has performed as well or better than any of the many states she has knowledge of. Tr. 88–89. The Court wishes to acknowledge the efforts of the following in bringing a final resolution to this case: the TXMHMR

---

6. Of course, the Court is mindful of the provisions of Federal Rule of Civil Procedure 60(b), which applies to this case in the same way that it applies to all other federal litigation.

7. *See* representation by Paul Coggins, attorney for Defendants at the November 26, 1991 hearing on the Settlement Agreement, Tr. 76–77.

Board, particularly its Chair, Ms. Ann Utley; the leadership of TXMHMR's Division of MR Services, especially Mr. Jaylon Fincannon and Mr. Rick Campbell; the Staff of Fort Worth and Travis State Schools, notably the Superintendents, Mr. Dean Lasley and Mr. Richard Smith; and counsel for the parties and the intervenor.

As noted by Plaintiffs' attorney David Ferleger, there is now in place a model that will support the continued growth of family-scale community homes in Texas, together with a dignified and normal life for the mentally retarded.

The Court therefore concludes (1) that dismissal with prejudice is mandated by the Settlement Agreement; (2) that the Court should not and does not incorporate the Settlement Agreement in this dismissal; and (3) that the Court should not and does not retain jurisdiction to enforce the Settlement Agreement but does retain jurisdiction to enforce Defendants' commitment to provide continuing services for Plaintiff John Lelsz, Jr.

This case is **DISMISSED** with prejudice.

SO ORDERED.