**UNITED STATES of America, Plaintiff,**

**Edward and Nancy Pine, Plaintiff–Intervenors,**

**v.**

**W.J. and Ann WAGNER, Mrs. Edward D.W. Hardin, Thomas E. Brents, Ray Troutman, and Sonia Ciraci, Defendants.**

Civil No. 3:94–CV–2540–H.

United States District Court,
N.D. Texas,
Dallas Division.

May 20, 1996.

* Editor's Note: Deletion incorporated for publication purposes.

Katherine Savers McGovern, U.S. Attorney's Office, Department of Justice, Dallas, TX, Brian F. Heffernan, Timothy J. Moran, U.S. Department of Justice, Civil Rights Division, Washington, DC, Lars T. Waldorf, U.S. Department of Justice, Housing and Civil Enforcement Section, Civil Rights Division, Washington, DC, for U.S.

David Ferleger, Law Office of David Ferleger, Philadelphia, PA, for Edward Pine, Nancy Pine, Lelsz–Lelsz Class.

Donald Nicholas Acuff, Law Office of D. Nicholas Acuff, Fort Worth, TX, for W.J. Wagner, Ann Wagner, Ray Troutman.

Rick K. Disney, Douglas Kressler & Wuester, Fort Worth, TX, for Edward D.W. Hardin.

Jeffrey Jack Wolf, Amy Eileen Scallan, Jackson & Walker, Fort Worth, TX, for Thomas E. Brents, Doris H. Brents.

Benjamin Allen Douglas, Rick K. Disney, Douglas Kressler & Wuester, Fort Worth, TX, for Vito Ciraci, Sonia Ciraci.

Garth Anthony Corbett, Advocacy Inc., Austin, TX, for Advocacy Inc.

Donald Curtis Templin, Haynes & Boone, Dallas, TX, Lawrence Andrew Gaydos, Haynes & Boone, Fort Worth, TX, for Julie M. Ratliff.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

Plaintiff United States ("the Government") filed a Fair Housing Act lawsuit against certain homeowners in the Ridgmar subdivision of Fort Worth, Texas. The Government alleged that Defendants violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, by filing a state lawsuit on July 1, 1991, to prevent the Pines from selling their home to Tarrant County Mental Health and Mental Retardation ("TCMHMR") for use as a group home for six mentally retarded children. Plaintiff–Intervenors Edward and Nancy Pine ("the Pines") joined in the Government's claims.

This case was tried before the Court, without a jury, on February 5 through 7, 1996, on the issue of liability only. The Court found that six Defendants violated the Fair Housing Act. *See* Memorandum Opinion and Order of March 12, 1996, 1996 WL 148531. On April 30, 1996, the damages/remedy phase of the case was tried before the Court, without a jury.

Any Finding of Fact containing a Conclusion of Law is also a Conclusion of Law. Any Conclusion of Law containing a Finding of Fact is also a Finding of Fact. All Findings of Fact and Conclusions of Law set forth in the Memorandum Opinion and Order of March 12, 1996, are incorporated herein by reference.

## I. FINDINGS OF FACT

### COMPENSATORY DAMAGES

1. The Pines suffered a $5,650 reduction in purchase price on the sale of their Juneau Road home as a result of delay and a lower second appraisal. Stipulated Fact Number 37. Although the delay in sale may have

been caused by acts of Defendants, *see* Memorandum Opinion and Order of March 12, 1996, at 18–19 n. 9, the Court is unable to find that the reduction in purchase price was proximately caused by the filing of the state court lawsuit. *Id.*

2. Gary Moates, an attorney, rendered legal services to the Pines in connection to the sale of their home to TCMHMR and Defendants' filing of the 1991 state court lawsuit. Moates charged the Pines $2,248.75 for such services. Plaintiffs' Exhibit 110.

3. Edward Pine hired attorney Kent Clay to defend him in the state court lawsuit. The Pines paid Clay $1,343.75 for his legal services. Stipulated Fact Number 35.

4. The Pines' allegedly precipitous purchase of the Golden Lane home was not caused by Defendants' filing of the 1991 state court lawsuit. The Pines had previously made an offer on another home that the seller refused. Edward Pine Testimony. Nancy Pine first looked at the Golden Lane home on June 27 or 28, 1991, prior to the July 1, 1991 filing of the state court lawsuit. Nancy Pine Testimony. And, the Pines had entered into a contract to purchase the Golden Lane home on June 28 or 29, 1991, also prior to Defendants' filing of the 1991 state court lawsuit. Nancy Pine Testimony. The Court is not convinced that Defendants' filing of the state court lawsuit caused the Pines to hastily move to the Golden Lane home. Moreover, Edward Pine testified that he does not believe the Pines suffered a loss on the subsequent sale of the Golden Lane home. Edward Pine Testimony.

5. The Pines do not seek recovery of business losses separate from business losses due to emotional distress. Edward Pine testified that he is not claiming any business loss to his corporation. Edward Pine Testimony.

6. The Pines suffered emotional distress, embarrassment, and humiliation proximately caused by the filing of the lawsuit. Edward Pine lost fifteen pounds, and was depressed and distraught over being named as a defendant in a lawsuit. Nancy Pine Testimony. In the words of Edward Pine, "nothing brought it home like the lawsuit because good people aren't supposed to be sued." Edward Pine Testimony. Edward Pine says he is embarrassed and feels like an outsider at meetings and social events. Edward Pine Testimony.

At least two of the Pines' children also suffered. One child began having problems in school, and one child was unable to enjoy a birthday celebration. Nancy Pine Testimony.

Nancy Pine was affected by the stress on her children and her husband, and watched her relationship with her father deteriorate. Nancy Pine Testimony. Nancy Pine was also upset over her treatment by her neighbors. Nancy Pine Testimony; Plaintiffs' Exhibit 302. Nancy Pine admits that publicity and flyers were a source of emotional distress for the family, but says she would not have suffered most of the emotional distress absent the lawsuit. Nancy Pine Testimony.

## PUNITIVE DAMAGES

1. Defendants intentionally violated the FHA by filing the state court lawsuit "with the intent to interfere, based on the handicap of the home's residents." Memorandum Opinion and Order of March 12, 1996, at 18.

2. In addition, there is "ample evidence that many of the Defendants displayed blatant discriminatory animus against the retarded." Memorandum Opinion and Order of March 12, 1996, at 22 and 23 n. 12.

3. Each Defendant violated the FHA by filing the 1991 state court lawsuit. Other activities by the individual Defendants suggest that a range of motivations caused them to each join in the 1991 state court lawsuit.

At one end is W.J. Wagner, who frequently spoke openly to the press. W.J. Wagner stated, "The whole idea of what they're doing is wrong. They get good care in the institutions. They're happy. Why should they live here? These people wouldn't know if they're in Ridgmar or Como." Liability Trial Transcript at 200. W.J. Wagner also remarked, "How would you like to have these people next door to you?" Plaintiffs' Exhibit 222. Moreover, the "Emergency" leaflet distributed by W.J. Wagner, Ann Wagner, Beverly Hardin, and Sonia Ciraci describes the sale

of the home as a "disaster" for "social reasons." Plaintiffs' Exhibit 3.

W.J. Wagner is followed by Sonia Ciraci and Beverly Hardin, both of whom helped him distribute leaflets, flyers, and petitions. Sonia Ciraci was "hysterical" about the sale to TCMHMR. Liability Trial Transcript at 550.

Ann Wagner, Thomas Brents, and Ray Troutman signed petitions against the group home and joined in the state court lawsuit, but evidence of discriminatory animus on their part is less pronounced.

4. It is not clear whether Defendants relied on the advice of counsel in filing the state court lawsuit. Beverly Hardin Testimony.

### FEES AND EXPENSES FOR INTERVENORS' ATTORNEY

1. The Court recognizes that David Ferleger, attorney for Plaintiff–Intervenors, is an experienced and capable attorney.

2. Ferleger seeks $226,673.00 in fees (907.20 hours at a rate of $250/hour) and $27,374.08 in expenses, for a total of $254,047.08.

3. After review of Ferleger's affidavits and exhibits (consisting of several hundred pages) and his testimony, the Court finds that some of Ferleger's expenses were not necessary. Ferleger used United Parcel Service and Federal Express services excessively. Ferleger stayed at expensive hotels while in Texas, perhaps for longer periods of time than necessary. For example, on one trip, Ferleger used two rooms at the Worthington Hotel, for ten nights, at a charge of $327 per night.

4. Ferleger duplicated some work performed by Department of Justice attorneys. For example, almost all witness interviews and depositions were conducted jointly by Ferleger and Department of Justice attorneys.

### INJUNCTIVE RELIEF

1. Defendants are not likely to ever again file a state court lawsuit to block the sale of a group home. Beverly Hardin Testimony.

## II. CONCLUSIONS OF LAW

### COMPENSATORY DAMAGES

■ .1. In a civil enforcement action brought by the United States on behalf of aggrieved individuals such as the Pines, the Court may grant the same relief that could be granted in a private enforcement action. *United States v. Scott,* 809 F.Supp. 1404, 1406 (D.Kan.1992). That relief shall accrue to the aggrieved individuals. *Id.;* 42 U.S.C. § 3612(o)(3). That relief includes actual and punitive damages. *Id.;* 42 U.S.C. § 3613(c)(1).

■ 2. Plaintiff–Intervenors Edward and Nancy Pine have proved and are awarded the following compensatory damages against all Defendants, jointly and severally:

$2,248.75 for legal services rendered by attorney Moates;

$1,343.75 for legal services rendered by attorney Clay; and

$7,500 for their emotional distress.

*See Ragin v. Harry Macklowe Real Estate Co.,* 6 F.3d 898 (2d Cir.1993) (Newspaper readers and organization filed suit under the FHA to challenge the depiction of only white models in advertisements for residential housing. The court found that the jury's award of $2,500 to each reader was adequate compensation for emotional distress.); *United States v. Balistrieri,* 981 F.2d 916 (7th Cir.1992) (United States brought action against apartment complex owner and rental agent for violation of FHA. The owner and rental agent racially discriminated in the terms or conditions for housing rental. The court awarded emotional distress damages of $2,000 to each black "tester" who posed as an apartment seeker for the purpose of testing the apartment complex for racial discrimination.); *Baumgardner v. Secretary of HUD,* 960 F.2d 572 (6th Cir.1992) (Landlord was held to have intentionally discriminated against women in violation of the FHA. Emotional distress award of $500.); *Woods–Drake v. Lundy,* 667 F.2d 1198 (5th Cir.1982) (Tenants prevailed in suit under FHA where landlord evicted them for entertaining black guests. Court notes that "it may be presumed that some degree of emotional distress will accompany an eviction so clearly

motivated by racial animus as this one."); *United States v. Scott*, 809 F.Supp. 1404 (D.Kan.1992) (Husband and wife tried to sell their home to be used as a group home for physically and mentally handicapped adults. Neighbors violated the FHA by filing a lawsuit to block the sale. The court awarded $2,000 in emotional distress damages to the wife, primarily because she referred to specific instances of cool treatment by neighbors or social shunning.).

### PUNITIVE DAMAGES

1. Both private plaintiffs and the Government may seek punitive damages under § 3613(c)(1).

■ 2. The standard for punitive damages in civil rights cases is when the "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).

■ 3. In the Fifth Circuit, the standard is "willful and gross disregard" of FHA rights. *Woods–Drake v. Lundy*, 667 F.2d 1198, 1203 (5th Cir.1982).

■ 4. A purpose of punitive damages is to deter defendants and others from engaging in the unlawful conduct. *Smith*, 461 U.S. at 54, 103 S.Ct. at 1639.

5. As an initial matter, the Court notes that it has ruled previously that Defendants' petitioning and leafleting activities, although arguably appalling, were constitutionally protected. Any award of punitive damages is therefore linked only to filing the state court lawsuit.

■ 6. An award of punitive damages is appropriate here because the Government and the Pines have demonstrated that certain Defendants' conduct, in filing the state lawsuit, involved reckless or callous indifference to the federally protected rights of others. *See Smith*, 461 U.S. at 56, 103 S.Ct. at 1640. *See* Memorandum Opinion and Order of March 12, 1996, at 18, 22, 23 n. 12.

7. In filing the 1991 state court lawsuit, Defendants sought an illegal objective.

Memorandum Opinion and Order of March 12, 1996, at 24–25.

8. Defendants' state lawsuit had no reasonable basis in law or fact. Memorandum Opinion and Order of March 12, 1996, at 25–28.

9. In filing the 1991 state court lawsuit, Defendants acted with improper motivation. Memorandum Opinion and Order of March 12, 1996, at 30–29.

10. For the reasons stated in Conclusions 7–9 above, it is also clear that certain Defendants acted with willful and gross disregard of the Pines' rights under the FHA. *See Woods–Drake v. Lundy*, 667 F.2d at 1203.

■ 11. A large award of punitive damages, however, is not appropriate, because the temporary restraining order lawsuit against Edward Pine was dismissed one week after being filed. *See* Memorandum Opinion and Order of March 12, 1996, Finding of Fact 68.

12. After consideration, the Pines are awarded punitive damages as follows:

$5,000 to be paid by W.J. Wagner;

$1,500 to be paid by Sonia Ciraci; and

$1,500 to be paid by Beverly Hardin.

### FEES AND EXPENSES FOR INTERVENORS' ATTORNEY

1. Under the FHA, a prevailing party is entitled to an award of reasonable attorney's fees. 42 U.S.C. § 3613(c)(2).

■ 2. A court should consider the following factors when awarding attorney's fees in civil rights cases: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent: (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards

in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).

3. Attorney's fees must be awarded only for attorney's fees that are reasonably necessary. *EEOC v. Clear Lake Dodge*, 60 F.3d 1146, 1154 (5th Cir.1995), *citing City of Riverside v. Rivera*, 477 U.S. 561, 568, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 (1986). Attorney's fees must not be awarded for attorney hours that are excessive, redundant or otherwise unnecessary. *Id.*

4. When one intervenes in a suit brought by the Government, the intervenor bears the burden of proving that the time spent was not redundant or unnecessary. *Id.*

5. The District Court has the duty to cut fees which the applicant has not shown to be reasonable. *Louisiana Power and Light v. Kellstrom*, 50 F.3d 319, 325 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995).

6. In providing for attorney's fees in civil rights cases, "Congress did not intend to allow private litigants to ride the back of the Justice Department to an easy award of attorney's fees." *Donnell v. United States*, 682 F.2d 240, 249 (D.C.Cir.1982), *cert. denied*, 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983). ("Obviously, if an intervenor did nothing but simply show up at depositions, hearings, and the trial itself, and spend lots of time reading the parties' documents, an award of attorneys' fees would be inappropriate. The same would be true if the intervenors' submissions and arguments were mostly redundant of the Government's or were otherwise unhelpful.").

7. In a case involving intervenors, a court may consider the following factors when determining whether to shift the intervenors' reasonable attorney's fees to the losing party: (1) whether the attorney general did not adequately represent the intervenors' interest; (2) whether the intervenors proposed different theories and arguments for

the court's consideration; and (3) whether the work the intervenors performed was of important value to the court. *League of United Latin American Citizens Council No. 4434 v. Clements*, 923 F.2d 365, 368 n. 2 (5th Cir.1991), *citing Donnell*, 682 F.2d 240. The Court is of the opinion that Ferleger's work was of important value to the Court at both the liability and remedy hearings.

8. The amount of recovery does not govern the amount of attorney's fees in a civil rights case. *See City of Riverside*, 477 U.S. at 569–81, 106 S.Ct. at 2691–98.

9. Because neither side has suggested a methodology for trimming Ferleger's attorney's fees in this case [1], the Court has these choices: (1) refer the attorney's fees issue to a Special Master for testimony and a time-consuming review of Ferleger's affidavits; (2) conduct the review itself and take further testimony; or (3) make its best estimate, percentage-wise, of Ferleger's contribution to the winning portion of the case for which the Government was primarily responsible. The Court takes the latter option.

10. As stated above, the Court recognizes that Ferleger, an experienced civil rights attorney, made valuable contributions to the case. But the Court also recognizes that Ferleger is not entitled to fees and expenses for time spent on Paragraph 14 of the Complaint in Intervention, which the Court dismissed. *See* Memorandum Opinion and Order of December 12, 1995. The Court also notes that the work performed by Ferleger on the successful claim initiated by the Government, although valuable, was to a considerable extent redundant or unnecessary.

*Fees*

11. A rate of $225/hour for Ferleger is reasonable, as approved by this Court for him in the *Lelsz v. Kavanagh* mental retardation litigation. *See generally* 903 F.Supp. 1037 (N.D.Tex.1995) for a history of this now-settled twenty year-old case.

---

1. Ferleger suggests that he was able to do three things for the Pines that the Government could not: (1) advise the Pines on their rights; (2) respond to discovery and depositions; and (3) advise the Pines regarding settlement. Ferleger's First Affidavit on Fees at 6, filed April 12, 1996, section entitled "Appropriateness of Separate Representation."

12. Based on invoices from December 27, 1995, through April 22, 1996, Ferleger expended 427.8 hours on this case after the Court dismissed Paragraph 14 of the Complaint in Intervention. *See* Second Ferleger Affidavit, filed April 25, 1996. At a rate of $225/hour, the total fees incurred by Ferleger after dismissal of Paragraph 14 are $96,-255.

13. After consideration the Court concludes that Ferleger is entitled to $28,-876.50, or approximately 30% of the total fees incurred after dismissal of Paragraph 14. The reduction is to account for overlap and duplication of work done by Ferleger and the Department of Justice attorneys.

14. At a rate of $225/hour, the total fees incurred by Ferleger for work done prior to the Court's dismissal of Paragraph 14 is $107,865. The Court recognizes that some of the work done by Ferleger prior to dismissal of Paragraph 14 must have related to the portion of the case on which Plaintiffs prevailed, for which the Department of Justice had primary responsibility. The Court therefore finds that Ferleger is also entitled to $5,398.25, which represents 5% of his requested fees for work done prior to the Court's dismissal of Paragraph 14.

*Expenses*

15. Ferleger is only entitled to expenses related to work performed after dismissal of Paragraph 14. In his affidavits, however, Ferleger does not itemize expenses by dates. The Court must therefore assume that there is a correlation between fees and expenses. The Court, prior to reduction for duplication, determined that Ferleger would be entitled to fees of $96,255 for work on the case after dismissal of Paragraph 14. This sum represents approximately 43% of the total fees requested by Ferleger.

16. Applying this ratio to the total expenses requested by Ferleger (43% × $27,-374.08), the Court determines that Ferleger is entitled to $11,770.86 for his expenses.

17. In total, the Court awards the Pines attorney's fees and expenses of $46,045.61.

**INJUNCTIVE RELIEF**

1. As previously noted, the Court believes that Defendants acted out of improper motivation. If the Court believed that there were any threat that Defendants would again file a state court lawsuit to block the sale of a group home, the Court would award injunctive relief. The Court, however, is convinced such a threat does not exist.

2. Moreover, the Court believes that the damages and attorney's fees awarded here serve as a sufficient deterrent, without the necessity of injunctive relief.

## III. CONCLUSION

The Court awards the following damages to the Pines, Plaintiff–Intervenors:

**COMPENSATORY DAMAGES** (Defendants W.J. Wagner, Ann Wagner, Beverly Hardin, Sonia Ciraci, Thomas Brents, and Ray Troutman jointly and severally liable)

$3592.50 for legal services; and

$7,500 for emotional distress.

Total Compensatory Damages: $11,092.50.

**PUNITIVE DAMAGES** (Defendants severally liable for the amounts shown below)

$5,000 to be paid by W.J. Wagner;

$1,500 to be paid by Sonia Ciraci; and

$1,500 to be paid by Beverly Hardin.

Total Punitive Damages: $8,000.

**ATTORNEY'S FEES AND EXPENSES** (Defendants W.J. Wagner, Ann Wagner, Beverly Hardin, Sonia Ciraci, Thomas Brents, and Ray Troutman jointly and severally liable)

Total Attorney's Fees and Expenses: $46,045.61.

**INJUNCTIVE RELIEF**

The Court does not award injunctive relief.

Judgment will be entered accordingly.

SO ORDERED.