United States Court of Appeals,

Fifth Circuit.

No. 92-7461.

Dr. Bettye R. LANGLEY, Plaintiff-Appellee Cross-Appellant,

v.

JACKSON STATE UNIVERSITY and Dr. Herman Smith, in his Official Capacity, Defendants-Appellants Cross-Appellees.

Feb. 28, 1994.

Appeal from the United States District Court for the Southern District of Mississippi.

Before DUHÉ and EMILIO M. GARZA, Circuit Judges, and BLACK,[*] District Judge.

EMILIO M. GARZA, Circuit Judge:

Jackson State University ("JSU") appeals the district court's factual finding that JSU breached the terms and conditions of an agreement which settled a prior racial discrimination suit brought by Dr. Bettye R. Langley. Langley cross-appeals, contending that the district court improperly allocated the burden of proof in finding that she failed to prove discrimination based upon her race or retaliation for bringing a prior discrimination suit. For the reasons set forth below, we affirm in part, and vacate and dismiss in part.

I

In 1977, Dr. Langley, a white female, began working at JSU, a predominately black institution in Jackson, Mississippi, as a professor of elementary and early childhood education in JSU's

---

[*]Chief Judge of the Southern District of Texas, sitting by designation.

1

School of Education.  In 1986, Dr. Langley filed a discrimination suit against JSU, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., claiming, *inter alia,* that she was being denied the opportunity to conduct a child abuse workshop because of her race.  A year later, Langley and JSU entered into a settlement agreement.  The district court, noting that the parties had stipulated to dismiss the action, ordered that the action be dismissed with prejudice.  The court, however, neither approved nor incorporated the settlement agreement into its order of dismissal.  The court also did not indicate that it intended to retain jurisdiction over future actions brought to enforce the settlement agreement.[1]

In 1990, Dr. Langley filed another Title VII suit against JSU, claiming that JSU had discriminated against her because of her race and in retaliation for her prior Title VII suit.  Dr. Langley claimed in particular that Dr. Johnnie Mills, a black female and academic dean of the School of Education, and Dr. Anita Hall, a black female and chairperson of Dr. Langley's academic department, constantly required her to teach an overload, refused to timely pay her, refused to approve her workshops in accordance with JSU policy, denied her merit pay increases, refused to provide her with

---

[1]The district court's order of dismissal provided:

> BY STIPULATION of the undersigned representatives for all parties in this action, pursuant to Rule 41 of the Federal Rules of Civil Procedure, it is hereby finally ordered, adjudged and decreed that the action is dismissed, with prejudice, with the parties to bear their own costs and attorney fees.

2

office space, furniture and telephone service, assigned her to double registration duties, and denied her sabbatical leave and travel expenses, all on account of Dr. Langley's race. In a separate action, Dr. Langley further claimed that JSU was violating the terms and conditions of the settlement agreement regarding the prior Title VII suit. The two actions were consolidated before trial.[2]

After a six-day bench trial, the district court issued a memorandum opinion and order, finding that Dr. Langley did not "sustain[ ] her burden of persuasion to demonstrate that any treatment she ... received [was] the result of retaliation and/or discrimination or that she has been subjected to a hostile racial environment such as would entitle her to relief." The district court further found, however, that Dr. Langley was "entitled to recover compensation for her work as continuing education coordinator from and after January 1990 inasmuch as the proof showed that [JSU] failed to grant her the twenty-five percent reduction set forth in her settlement agreement with [JSU] for those services."[3]

JSU contends on appeal that the district court lacked subject

---

[2]Dr. Langley did not argue that jurisdiction over the motion to enforce the settlement agreement resulted from the fact that the breach of the settlement agreement constituted unlawful discrimination in violation of Title VII. Instead, Dr. Langley argued that because the case which the agreement settled was an action arising under Title VII, the district court "retain[ed] said [federal subject matter] jurisdiction to enforce the settlement agreement."

[3]The district court did not address jurisdiction over the motion to enforce the settlement agreement in its opinion.

matter jurisdiction over the action to enforce the settlement agreement, and that even if the court had jurisdiction, the court clearly erred in finding that JSU breached the terms and conditions of the agreement. In her cross-appeal, Dr. Langley contends that the district court erred in failing to apply a "motivating factor" proof methodology[4] to her claims of discrimination and retaliation.

## II

## A

### Breach of the Settlement Agreement

#### 1. Subject Matter Jurisdiction

JSU first contends that the district court lacked subject matter jurisdiction over Dr. Langley's action to enforce the settlement agreement.[5] Citing *Fairfax Countywide Citizens v. Fairfax County,* 571 F.2d 1299 (4th Cir.), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), JSU argues that because the district court failed to approve or incorporate the settlement agreement into its order of dismissal, the court required some independent ground upon which to base federal jurisdiction. In *Fairfax,* the district court dismissed a racial discrimination suit brought under the Equal Protection Clause after the parties had

---

[4]*See Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

[5]The consolidation of Dr. Langley's two separate actions did not confer subject matter jurisdiction over the action to enforce the settlement agreement. Where two actions have been consolidated, we must examine "each consolidated case separately to determine the jurisdictional premise upon which each stands." *Kuehne & Nagel (AG & CO) v. Geosource, Inc.,* 874 F.2d 283, 287 (5th Cir.1989).

4

entered into settlement agreements. *See id.,* 571 F.2d at 1301. The district court neither approved nor incorporated the settlement agreements into its dismissal orders. *See id.* Three years later, plaintiffs moved the district court to vacate its dismissal orders so that the court could enforce the settlement agreements. *See id.* at 1302. The Fourth Circuit held that while "a district court has the authority under Rule 60(b)(6) to vacate its prior dismissal order and restore the case to its docket," a district court is not empowered to enforce a settlement agreement "unless the agreement had been approved and incorporated into an order of the court, or, at the time the court is requested to enforce the agreement, there exists some independent ground upon which to base federal jurisdiction." *Id.* at 1303; *see also McCall-Bey v. Franzen,* 777 F.2d 1178, 1186-87 (7th Cir.1985) (adopting *Fairfax* rule) (holding that "unless jurisdiction is retained [a] settlement agreement requires an independent basis of federal jurisdiction in order to be enforceable in federal rather than state court"). *But see Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir.) (finding subject matter jurisdiction over a post-dismissal action to enforce a settlement agreement, by virtue of a district court's "inherent power to enforce settlement agreements entered into in settlement of litigation pending before [it]"), *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976).

A federal district court is a court of limited jurisdiction, and the burden of establishing jurisdiction is on the party claiming it. *See McNutt v. General Motors Acceptance Corp.,* 298

U.S. 178, 182-83, 56 S.Ct. 780, 781-82, 80 L.Ed. 1135 (1936). Dr. Langley argues that the district court had subject matter jurisdiction over the action to enforce the settlement agreement on the following grounds: (a) her motion to enforce the settlement agreement is an action arising under Title VII; and (b) federal courts have the inherent power to enforce agreements settling litigation pending before them. Both grounds are insufficient to support subject matter jurisdiction.

Dr. Langley cites *E.E.O.C. v. Safeway Stores, Inc.,* 714 F.2d 567 (5th Cir.1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2384, 81 L.Ed.2d 343 (1984), for the proposition that an action to enforce an agreement settling a Title VII suit is an action arising under federal law. In *Safeway,* we held that "federal courts have jurisdiction over suits to enforce Title VII *conciliation* agreements." *Id.* at 571-72 (emphasis added). We reasoned that "[a]lthough Title VII does not explicitly provide the EEOC with the authority to seek enforcement of conciliation agreements in federal court, it would be antithetical to Congress' strong commitment to the conciliatory process if there were no federal forum in the EEOC could enforce such agreements." *Id.* at 572. We further noted that Congress' commitment to the conciliatory process was evidenced by its creation of the EEOC and establishment of an "administrative structure whereby the agency "would have an opportunity to settle disputes through conference, *conciliation,* and persuasion *before the aggrieved party was permitted to file a lawsuit.'* " *Id.* (emphasis added). In our case, Dr. Langley does not offer, and we

6

cannot find, any indication that Congress has established an administrative structure evidencing its intent to provide a federal forum for private parties to enforce settlement agreements ending discrimination disputes after a lawsuit has been filed. Consequently, our decision in *Safeway* is not on point. Moreover, we have found no authority applying the holding in *Safeway* to non-administrative settlements of Title VII suits. We therefore reject Dr. Langley's first basis for showing subject matter jurisdiction.

Langley next argues that even if the action to enforce the settlement agreement was not an action arising under Title VII, subject matter jurisdiction nevertheless existed because federal district courts have "the inherent power ... to enforce an agreement settling litigation pending before the court." *In re Corrugated Container Antitrust Litigation,* 752 F.2d 137, 142 (5th Cir.) (citing *Massachusetts Casualty Ins. Co. v. Forman,* 469 F.2d 259 (5th Cir.1972); *Cia Anon Venezolana de Navegacion v. Harris,* 374 F.2d 33 (5th Cir.1967)), *cert. denied,* 473 U.S. 911, 105 S.Ct. 3536, 87 L.Ed.2d 660 (1985); *see Aro Corp.,* 531 F.2d at 1371. In *Corrugated,* the plaintiffs sought to enforce an agreement which had settled litigation before the district court. The plaintiffs brought the action to enforce the settlement agreement after the prior suit had been dismissed. Because the district court had approved of and incorporated the terms of the settlement agreement in its consent decree, we had no cause to decide the issue whether a district court need have federal jurisdiction over an action to

7

enforce a settlement agreement independent of the matter settled by the agreement, where the agreement was neither approved nor incorporated by the court.[6] We are presented squarely with that issue today.

In deciding that issue, we initially note that Dr. Langley's action to enforce the settlement agreement is tantamount to an action for "breach of contract remediable under state but not federal law, and therefore only in state court since the parties are not of diverse citizenship." *McCall-Bey,* 777 F.2d at 1185 (citing *Fairfax,* 571 F.2d at 1303). We therefore must decide whether to accept Dr. Langley's argument that a federal district court has subject matter jurisdiction over a breach of contract action "merely by virtue of having had jurisdiction over the case that was settled." *Id.; see also Fairfax,* 571 F.2d at 1304 (referring to this ground for upholding federal jurisdiction as "derivative" jurisdiction). Our resolution of this question is guided by the Seventh Circuit's persuasive reasoning in *McCall-Bey,* where the court stated:

---

[6]We therefore declined to take sides in the jurisdictional debate spawned by *Aro Corp.* and *Fairfax. See Corrugated,* 752 F.2d at 142 ("It is unnecessary for us to approve the result reached by the Fourth Circuit [*Fairfax* ], which may be contrary to Fifth Circuit opinions concerning the inherent power of a district court to enforce an agreement settling litigation pending before the court."). Although the Supreme Court has yet to resolve this inter-circuit conflict, it has decided recently to review a decision adopting the *Aro Corp.* view. *See Kokkenen v. Guardian Life Ins. Co. of America,* 993 F.2d 883 (9th Cir.1993) (holding that a district court's inherent power summarily to enforce a settlement agreement concerning an action before it, confers subject matter jurisdiction to enforce a post-dismissal action to enforce such an agreement), *cert. granted,* --- U.S. ----, 114 S.Ct. 341, 126 L.Ed.2d 306 (1993).

8

> If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral. A dispute over the meaning of an agreement is "collateral" for this purpose when it is not the kind of dispute that is likely to require for its just resolution the special independence, experience, and perspective that federal courts may be thought to bring to the decision of certain cases. A dispute between residents of the same state over the meaning of their contract is not of that kind. Such disputes are traditionally, uncontroversially, and exclusively with the jurisdiction of state courts.

*McCall-Bey,* 777 F.2d at 1186 (citation and attribution omitted).

We further note that Dr. Langley's argument in favor of "derivative" jurisdiction knows no time limit. As the Seventh Circuit observed:

> If 20 years from now the plaintiff complains that the defendants have violated a term of the settlement agreement, the judge would, in the plaintiff's view have jurisdiction to entertain the complaint—and this regardless of whether the district judge intended to retain jurisdiction. No statute confers such a jurisdiction and we hesitate to use so formless a concept as inherent power to give the federal courts an indefinite jurisdiction over disputes in which the federal interest may be nonexistent.

*Id.* at 1187.[7] For these reasons, we reject the view espoused by the Sixth Circuit in *Aro,* in favor of the position taken by the Fourth Circuit in *Fairfax* and by the Seventh Circuit in *McCall-Bey.* Accordingly, we hold that once a court dismisses an action with prejudice because of a settlement agreement, and the agreement is neither approved of nor incorporated by the court in its decree or

---

[7]We note that over two years passed between the time the district court dismissed Dr. Langley's initial Title VII suit and Dr. Langley filed her motion to enforce the settlement agreement.

9

order and the court does not indicate any intention to retain jurisdiction, an action to enforce the settlement agreement requires federal jurisdiction independent of the action that was settled.

Although we have speculated that *Fairfax* may be contrary to our prior decisions in *Massachusetts Casualty* and *Cia Anon, see Corrugated,* 752 F.2d at 142 & n. 9 (dicta), our reading of those cases reveals no conflict with the rule we adopt today. For example, in *Massachusetts Casualty,* the plaintiff sought to enforce a settlement agreement entered into to end litigation *then pending* before the district court. In other words, unlike the case before us today, the motion to enforce the settlement agreement was filed *before* the district court dismissed the case. We therefore had no cause to consider the issue whether jurisdiction existed over the settlement agreement when we held that "[a] trial court has the power to summarily enforce a settlement agreement entered into by litigants *while the litigation is pending before it."* Id., 469 F.2d at 260 (citing *Cia Anon,* 374 F.2d at 35). Our prior decisions in *Massachusetts Casualty* and *Cia Anon* are therefore distinguishable. *See Fairfax,* 571 F.2d at 134 (stating that the inherent power of a district court to enforce settlement agreements, as set forth in cases such as *Massachusetts Casualty* and *Cia Anon,* "presupposes [rather than confers] ... federal jurisdiction over the case or controversy"). Accordingly, because the district court lacked subject matter jurisdiction over the settlement agreement, we vacate the district court's determination

that JSU breached the agreement and dismiss Dr. Langley's suit to enforce the agreement.

## 2. Clear Error

JSU also contends that the district court clearly erred in finding that JSU breached the terms and conditions of the settlement agreement. Because we vacate the district court's determination that JSU breached the agreement and dismiss Dr. Langley's suit to enforce the agreement, we need not address whether the district court's underlying findings of fact were clearly erroneous.

### B

### Proof Methodology

In her cross-appeal, Dr. Langley contends that the record contains direct evidence that racial animus motivated in part the employment decisions affecting her. "When a plaintiff presents credible direct evidence that discriminatory animus in part motivated or was a substantial factor in the contested employment action, the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Brown v. East Mississippi Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir.1993) (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). Langley argues that the district court's failure to use the "motivating factor" proof methodology justifies a remand.

Our thorough review of the record reveals no direct evidence

11

that racial animus motivated in part the employment decisions affecting Dr. Langley. At most, the record shows that Dr. Langley's supervisors were race-conscious to the extent that some felt uncomfortable with, and possibly even resented, Dr. Langley's presence at JSU, an historically black institution. For example, Dr. Langley testified that Dr. Hall told her that "she doesn't see why black students feel that they need to have white advisors" and that "black people are overlooked at Jackson State to give white faculty more rights." Another white faculty member, Dr. Marie Roos, testified that Dr. Hall had indicated to her that Dr. Hall would prefer an all-black institution so there would be less competition between blacks and whites. Although these comments are indicative of race-consciousness, they do not constitute direct evidence that discriminatory animus motivated in part any of the decisions affecting Dr. Langley. *Cf. Young v. City of Houston, Tex.,* 906 F.2d 177, 182 (5th Cir.1990) (holding that an employer's use of the terms "white tokens" and "white faggots" did not necessarily constitute direct evidence that racial animus motivated in part an employment decision). To shift the burden on the employer to show by a preponderance of the evidence that it would have made the same decision even without the forbidden factor, the employee must show that "the employer *actually relied on* [the forbidden factor] in making its decision." *Price Waterhouse,* 490 U.S. at 250, 109 S.Ct. at 1791 (emphasis added). Dr. Langley failed to make this showing. Because no direct evidence of motivating racial animus existed, the district court properly

12

refused to apply the "motivating factor" proof methodology to Dr. Langley's claims. We therefore reject Dr. Langley's argument and affirm the district court's findings that she failed to prove discrimination or retaliation

                                III

For the foregoing reasons, we AFFIRM the district court's findings that Langley failed to prove discrimination based upon her race or retaliation for bringing a prior discrimination suit. However, because of the lack of subject matter jurisdiction, we VACATE the district court's determination that JSU breached the settlement agreement, and DISMISS Dr. Langley's suit to enforce the agreement.