**James R. MITCHELL, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–817C.

United States Court of Federal Claims.

Aug. 6, 1999.

James R. Mitchell, plaintiff, pro se.

Ming–Yuen Meyer–Fong, U.S. Department of Justice, Washington, D.C., for defendant.

### *OPINION*

BASKIR, Judge.

Mr. Mitchell, the Plaintiff, brought his complaint in this Court to enforce a settlement agreement entered into between the Government and himself in a case before the United States District Court, District of New Hampshire (District Court). The District Court dismissed his effort to enforce the settlement, finding no subject-matter jurisdiction and suggesting this Court has jurisdiction.

Defendant has filed a motion to dismiss and a motion for summary judgment pursuant to RCFC 12(b)(1) and RCFC 56, respectively. After carefully examining briefs and questioning the parties during a status conference, the Court reluctantly, but unavoidably finds that it also lacks jurisdiction to adjudicate this matter. We shall have more to say on this dual jurisdictional disclaimer.

**Defendant's motion to dismiss is hereby GRANTED.** It is therefore unnecessary to address Defendant's motion for summary judgment.

*Background*

The facts underlying the Complaint are presumed accurate for purposes of ruling upon a motion to dismiss for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1). *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). As is often the case with *pro se* litigants, the Complaint is not clear or explicit. Thus, we have supplemented it with facts and explanations Mr. Mitchell offered during the status conference.

Suffice it to say, Mr. Mitchell, appearing *pro se,* has traveled a long, hard, complicated, and frustrating adjudicatory road to get to this Court. He first filed administrative claims in 1991 and again in 1994 against his employer, the Occupational Safety and Health Administration, an agency of the U.S. Department of Labor. He alleged he was denied employment because of discrimination based on disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791. Administrative judges designated by the U.S. Equal Employment Opportunity Commission (EEOC) denied his 1991 claim, but he was successful in his 1994 claim.

After administrative appeals of the 1991 claim were unsuccessful, Mr. Mitchell filed suit in 1995 in U.S. District Court. Meanwhile, he pursued the second claim under the administrative procedures established for such purposes. The administrative judge, hearing the 1994 complaint, recommended that Mr. Mitchell be offered the employment he sought under that claim, including back pay and interest for the nearly two and one-half years his claim was pending resolution. The Government adopted the recommendation on December 10, 1996.

Apparently, Mr. Mitchell's triumph served as a catalyst for settlement discussions regarding the 1991 claim in District Court. As he admitted during the status conference, he was much more enthusiastic about the job prospects surrounding the 1991 claim than he was about the employment to which he was now entitled by virtue of the administrative judge's ruling on the 1994 claim. Accordingly, the parties worked out a Stipulation for Compromise and a Release, that was signed March 8, 1997. The agreement was not incorporated in the dismissal of his 1995 District Court action.

The terms of the settlement allowed Mr. Mitchell to work in Concord, New Hampshire, where he wished to reside, and agreed to pay back wages and interest. Peace between Mr. Mitchell and the Government, however, was short-lived. A new dispute arose involving the amount of back wages and interest owed to Mr. Mitchell. He maintained that the agreement did not encompass his successful 1994 decision, but related solely to his 1991 claims. The United States, in turn, took the position the agreement encompassed all matters between the parties.

On September 10, 1997, Mr. Mitchell brought suit in the District Court a second time, now to enforce his understanding of the settlement agreement that led to the dismissal of his 1995 litigation. On October 20, 1997, Magistrate Judge James R. Muirhead recommended dismissal of the suit without prejudice. He found that Mr. Mitchell had not sufficiently pled jurisdiction in District Court, and broadly suggested that he might file his claim in our Court. *Mitchell v. United States,* Civil No. 97–452–JD (D. NH Oct. 20, 1997). Mr. Mitchell took the hint—he filed the complaint in this Court on December 1, 1997. The District Court adopted the Magistrate's recommendation, and ordered the Complaint dismissed on December 10, 1997. Notably, the District Court did not formally "transfer" the case.

On January 27, 1999, this matter was assigned to the undersigned Judge. A status conference was held on April 20, 1999. Pursuant to the ORDER of this Court, Mr. Mitchell filed additional submissions regarding the jurisdictional issues identified in the conference. Those materials and all other written materials were considered by the Court in reaching its decision.

*Discussion*

*Court of Federal Claims Jurisdiction*

■ We are faced with an unfortunate jurisdictional dilemma in this case. On the one

hand, we must respect the determination of a sister Court as to its own jurisdiction, yet on the other, we must strictly adhere to the statutory limitations placed upon the jurisdiction of our Court under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1988). *See generally, Rodriguez v. United States,* 862 F.2d 1558 (Fed.Cir.1988). That jurisdiction also may be pre-empted in situations where Congress has provided a comprehensive remedy elsewhere. *United States v. Fausto,* 484 U.S. 439, 454–55, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (Tucker Act jurisdiction over claim for back pay not appropriate given procedures established under Civil Service Reform Act). And, while a plea bargain is a contract, it is not a contract which this Court can enforce. *See Lee v. United States,* 33 Fed.Cl. 374, 380 (1995)(Court cannot entertain claim for breach of Title VII settlement agreement).

■ Such is the case with Plaintiff's claims of discrimination by employers. With Title VII of the Civil Rights Act of 1964, §§ 701–718, as amended, 42 U.S.C. §§ 2000e–17 (1982), Congress has defined a comprehensive and exclusive statutory scheme by which Federal employees may redress discrimination claims. *Fausto v. United States,* 16 Cl.Ct. 750, 752–53 (1989). Judicial review of those claims rests with the district courts. *Id.* These remedies are specifically made available to a claimant under the Rehabilitation Act. 29 U.S.C. § 794a(a)(1). *Hadley v. Dept. of Navy,* 229 Ct.Cl. 591, 1981 WL 22067, *2 (1981)(unpub.). Consequently, this Court lacks the authority to review or enforce the administrative decision resulting from EEOC proceedings. *Id.* Mr. Mitchell's 1995 suit in District Court reflects that jurisdictional allocation.

A separate but closely related question is whether a similar jurisdictional limitation binds this Court regarding enforcement of settlement agreements flowing from Title VII actions in District Court. As indicated during the status conference, the Court finds the decision in the *Lee* case persuasive on this issue. There, this Court held that it could not entertain a claim alleging a breach of an agreement settling an employment discrimination suit. *Lee,* 33 Fed.Cl. at 380 (following *Fausto,* 16 Cl.Ct. at 753). We see no

reason to deviate from the views expressed in those decisions. We are constrained, therefore, to dismiss Mr. Mitchell's complaint for want of subject-matter jurisdiction.

### The Magistrate's Views

Our conclusion, disappointing to a litigant in ordinary circumstances, must be especially frustrating to Mr. Mitchell. After all, he first filed suit in District Court, only to be told he was in the wrong place and should try this Court. Or apparently told that. Closely read, the Magistrate's recommendation actually says no more than that Mr. Mitchell has not asserted a jurisdictional basis for his suit in District Court. Strictly speaking, he was dismissed for a pleading failure. As "dicta," if such exists in a recommendation, the Magistrate speculates on whether jurisdiction over the "contract" of settlement might lie with the District Court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (West 1999), or with this Court, if Mr. Mitchell, having omitted any claim for sum certain, should claim more than $10,000.

Though not necessarily critical to the District Court's decision to dismiss the 1997 complaint, the Magistrate's thinly veiled suggestion that Mr. Mitchell pursue his claim in this Court assumed the effort to enforce a settlement was a contract action. Given the authority noted above, the Court need not quarrel with this characterization, but we note the characterization does not share universal support. *See Good v. United States,* 23 Cl.Ct. 744, 746 (1991)(element of "exchange" on which notion of contract depends not present in settlement agreement, as settlement is an acknowledgment of pre-existing legal entitlements rather than an independent promise); *see also, Bobula v. United States Dept. of Justice,* 970 F.2d 854 (Fed.Cir.1992)(settlement of personnel grievances may not be enforced as contract outside the Civil Service Reform Act); *Amin v. Merit Systems Protection Board,* 951 F.2d 1247 (Fed.Cir.1991) (enforcement of settlement part of original personnel action before MSPB); *but see Massie v. United States,* 40 Fed.Cl. 151, 164–65 (1997) (compromise settlement under Military Claims Act fit classic

definition of express contract), *rev'd on other grounds,* 166 F.3d 1184 (Fed.Cir.1999).

Whatever label is placed upon Mr. Mitchell's claim, we are reluctant to resolve disputed settlement agreements made by parties litigating in U.S. District Courts. We would feel this reluctance even in the absence of a pre-emptive statutory scheme such as Title VII.

Having said that, the Court recognizes that in the context of a transferred case, a transferor Court's rulings on jurisdiction are the "law of the case" and may be reversed by a transferee Court only in exceptional circumstances. *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 819, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Of course, this case does not come before us via formal transfer. The District Court Order merely approved the recommendation of the Magistrate, to wit, that the Complaint "be dismissed for lack of subject matter jurisdiction ... without prejudice, should Mr. Mitchell choose to re-file here for a sum of less than $10,000, or to pursue his claim in the U.S. Court of Federal Claims." *Mitchell v. United States,* Civil No. 97–452–JD (D.N.H., Oct. 20, 1997). However, this technical distinction is small solace to Mr. Mitchell, a lay person merely abiding by the "instructions" of a federal magistrate. To Mr. Mitchell, the "jurisdictional ping-pong" *Christianson* sought to prevent is no less exasperating. 486 U.S. at 818, 108 S.Ct. 2166.

No matter how desirous we are to put this matter to rest—that is, to decide Mr. Mitchell's claim on the merits—we are constrained by precedent not to accept jurisdiction. In *Rodriguez v. United States,* 13 Cl.Ct. 399, *rev'd,* 862 F.2d 1558 (Fed.Cir.1988), the District Court transferred to the then-Claims Court a tort case clearly outside this Court's jurisdiction. The Court accepted the transfer, took jurisdiction, and quickly dismissed the case. The Court refused to retransfer the case erroneously transferred from District Court, adhering to the Supreme Court's admonition about respecting law of the case. The decision was reversed by the Federal Circuit because the original transfer from the District Court was clearly erroneous. *Rodriguez,* 862 F.2d at 1560. For this Court to assume jurisdiction over a disputed settlement agreement in a Title VII discrimination case would likewise be clearly erroneous. If Mr. Mitchell's case had been formally transferred, we would nevertheless be constrained to reject it.

Mr. Mitchell has every right to be exasperated by this result. A lay person naturally expects rulings of the courts to make sense, to be consistent. Members of the legal profession know better. Mr. Mitchell might take some comfort from these sympathetic words from Justice Brennan:

> The age-old rule that a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists has always worked injustice in particular cases. Parties often spend years litigating claims only to learn that their efforts and expense were wasted in a court that lacked jurisdiction. Even more exasperating for the litigants (and wasteful for all concerned) is a situation where, as here, the litigants are bandied back and forth helplessly between two courts, each of which insists the other has jurisdiction. Such situations inhere in the very nature of jurisdictional lines, for as our cases aptly illustrate, few jurisdictional lines can be so finely drawn as to leave no room for disagreement on close cases.

*Christianson,* 486 U.S. at 818, 108 S.Ct. 2166.

### Conclusion

The Government's repeated victories in this litigation have not been without cost. It has consumed the time and energy of two courts, and the Government has been forced to defend two suits, with no resolution of Mr. Mitchell's claim yet in sight. More litigation might well follow. The unnecessary waste of public resources and the accompanying frustration to a *pro se* litigant already suffering under a disability, might possibly have been avoided.

*Pro se* cases impose a special burden on courts. When the United States is the Defendant, it has an obligation that goes beyond simply winning; its superior obligation is to see that justice is done for its citizens. The Government should, therefore, share some of the courts' burden of *pro se* litigation. Cer-

tainly, as the Government moves to dismiss a citizen's suit for failure to choose the correct forum—sometimes a challenge that defeats even experienced lawyers—it would not be too much for it to suggest the correct forum, or at least to make clear to the Plaintiff its intention also to challenge alternative courts the Plaintiff might choose.

The Court is tempted to offer Mr. Mitchell some advice about the proper forum for his complaint but, mindful of the fate of Magistrate Judge Muirhead's recommendation, will not yield to that temptation. Instead, we suggest that the jurisdictional complexities of this case demand the attention of a skilled attorney, and we recommend that Mr. Mitchell obtain one. That, after all, is what lawyers are for.

The Clerk is directed to dismiss Plaintiff's complaint for failure to establish subject-matter jurisdiction. The complaint shall be dismissed without prejudice.

IT IS SO ORDERED.