Ruthie **GRISWOLD** and Irma Coleman, Plaintiffs,

v.

The **UNITED STATES,** Defendant.

No. 03–412 C.

United States Court of Federal Claims.

July 30, 2004.

William F. Piper, Portage, MI, for plaintiffs.

Lisa B. Donis, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HEWITT, Judge.

This case was filed in this court on February 21, 2003 and thereafter transferred to the United States District Court for the Western District of Michigan under 28 U.S.C. § 1631 (2000) pursuant to this court's Order of June 19, 2003. On October 15, 2003, the District Court for the Western District of Michigan ordered that this case be transferred back to this court, also pursuant to 28 U.S.C. § 1631, and the case was re-opened on December 30, 2003. Now before the court is Plaintiffs' Motion for Reconsideration. The motion was filed in response to this court's Order of March 12, 2004, directing plaintiffs to move for reconsideration of this court's "decision dated June 19, 2003 (finding an absence of jurisdiction in this court to consider plaintiff's complaint)," "[i]n light of the opinion of the District Court for the Western District of Michigan dated October 15, 2003 (concluding that it must transfer the proceedings back to this court because it lacked jurisdiction)." Order of Mar. 12, 2004. The parties' briefing is complete.[1] For the following reasons, the court DE-

NIES plaintiffs' motion. The case shall be transferred to the District Court for the Western District of Michigan because this court finds that it lacks jurisdiction.

## I. Background

On February 21, 2003, plaintiffs filed suit in the United States Court of Federal Claims alleging that the United States breached the agreements with each of them (Settlement Agreements) settling plaintiffs' claims against the United States Postal Service (USPS) for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 (2000). *See* Complaint (Compl.) ¶¶ 1–4. Plaintiffs allege that "[d]efendant has refused or neglected to honor the terms of the [Settlement] Agreement[s] and has specifically breached paragraphs five (5) and six (6) of the [Settlement] Agreements." Compl. ¶ 17. Paragraphs five and six of the respective Settlement Agreements[2] state:

(5) The Postmaster General agrees that the Plaintiff shall have the right to be considered for and shall be eligible for future employment with the United States Postal Service and nothing in her past employment with the United States Postal Service shall affect such eligibility. Her right to take the Civil Service exam and be considered for employment by the United States Postal Service shall be equal to all other persons who take the exam.

(6) The United States Postal Service will notify William F. Piper, Esquire, of the date and time of the next civil service exam.

Compl. Ex. 1 ¶¶ 5–6 (Settlement Agreement with Ruthie Griswold); Compl. Ex. 2 ¶¶ 5–6

---

1. Plaintiffs have filed a Motion for Reconsideration (Pls.' Mot.). In response, defendant has filed Defendant's Response in Opposition to Plaintiffs' Motion for Reconsideration of this Court's June 19, 2003 Order Transferring the Case to the United States District Court (Def.'s Resp.).

2. Paragraph five of the Settlement Agreement executed by Ms. Irma Coleman differs in one respect from paragraph five of the Settlement Agreement executed by Ms. Ruthie Griswold. The following language is appended to para-

graph 5 of the Settlement Agreement executed by Ms. Irma Coleman:

There is one exception to this paragraph. This exception is that the Postmaster and the Plaintiff agree that the Plaintiff shall not have the right to be considered for or be eligible for future employment with the Oshtemo Processing and Distribution Center of the United States Postal Service.

Compl. Ex. 2 ¶ 5. *Compare id. with* Compl. Ex. 1 ¶ 5.

(Settlement Agreement with Irma Coleman). In particular, plaintiffs assert that in contravention of paragraphs five and six of the Settlement Agreements, "[d]efendant has never notified [plaintiffs' counsel] William F. Piper of exam times and locations," Compl. ¶¶ 10, 12, and plaintiffs complain that, "[u]pon information and belief[,] at least one, and most likely several, opportunities to take the exam ha[ve] expired," id. ¶ 13. Plaintiffs claim that they "have been damaged by [d]efendant's breach because [they] would have taken and passed the [civil service] exam and returned to work for the United States Postal Service," id. ¶ 18, and seek "a judgment in their favor, to include all compensatory [damages], in an amount equal to what the plaintiffs would have earned had they become employed by the Post Office as if they had taken and passed the first exam in question, and incidental damages, attorneys fees, costs, all recoverable interest and any other relief ... deem[ed] fair and just, including all appropriate equitable orders of instatement, future notice, test access, front pay and other appropriate equitable relief and orders," id. at 3.

By Order dated June 19, 2003, this court transferred this action, pursuant to 28 U.S.C. § 1631, to the United States District Court for the Western District of Michigan on the ground that this court does not possess jurisdiction to entertain breach of contract actions premised upon Title VII settlement agreements.

On October 15, 2003, this case was transferred back from the United States District Court for the Western District of Michigan. In its Opinion dated October 15, 2003, *Griswold v. Potter*, No. 03–429 (W.D.Mich. Oct. 15, 2003) (Transfer Opinion), the district court stated that, consistent with the Supreme Court's instruction in *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), "there must be some independent basis for [the district court] to enforce the settlement agreements." Transfer Opinion at 4. The district court further stated that "a settlement agreement does not provide an independent basis for federal jurisdiction merely because the underlying claims were federal question claims." *Id.* at 5. Finding

that "[p]laintiffs' claims are straight breach of contract claims, and [that] nothing in those claims suggests that a court would be required to interpret or apply the provisions of Title VII in determining whether [d]efendant breached the settlement agreements by not informing [p]laintiffs of the time and date of the next Civil Service Exam," id. at 6, the district court determined that it does not have jurisdiction over plaintiffs' claims, id. at 8–9 (citing *Langley v. Jackson State Univ.*, 14 F.3d 1070 (5th Cir.1994) and *Morris v. City of Hobart*, 39 F.3d 1105 (10th Cir.1994)). Noting that its jurisdiction over this contract action would be proper under the Little Tucker Act, 28 U.S.C. §§ 1346(a)(2) (2000), "only if [p]laintiffs' claims do not exceed $10,000," the district court concluded that it lacked jurisdiction based on the parties' representations that plaintiffs' claims "are far in excess of $10,000." Transfer Opinion at 10. Accordingly, the district court ordered a transfer of this action back to this court pursuant to 28 U.S.C. § 1631, to "serve the interest of justice." *Id.* at 11.

## II. Discussion

### A. Standard of Review

■ Rule 59(a)(1) of the Rules of the United States Court of Federal Claims (RCFC) permits, on motion by a party, reconsideration of any issue "for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." On reconsideration of an issue pursuant to Rule 59, "the court may ... amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." RCFC 59(a)(1). The "decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed.Cir.1990). A motion for reconsideration should be considered with "exceptional care." *Fru–Con Constr. Corp. v. United States*, 44 Fed.Cl. 298, 300 (1999) (citations and quotations omitted). This court has stated that a motion for reconsideration under Rule 59 "must be based on a manifest error of law or mis-

take of fact and must show either: (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice." *First Fed. Lincoln Bank v. United States*, 60 Fed.Cl. 501, 502 (2004); *see also Keeton Corr., Inc. v. United States*, 60 Fed. Cl. 251, 253 (2004) (same); *Bannum, Inc. v. United States*, 59 Fed.Cl. 241, 243 (2003) (same).

Here, plaintiffs urge the court to reconsider its decision of June 19, 2003 in light of the district court's opinion and to exercise jurisdiction over this action. Plaintiffs' Memorandum of Law in Support of Motion for Reconsideration (Pls.' Mem.) at 1–2. To determine whether any "manifest injustice" has occurred in this case, the court now reconsiders its June 19, 2003 decision finding no jurisdiction.

### B. Reconsideration of Jurisdiction Over Settlement Agreements in Title VII Cases

Plaintiffs assert that because "interpretation of the provision of the [S]ettlement [A]greement[s] in dispute [does not] relate[ ] ... at all to the issue of discrimination[,] ... it appears that this claim for breach of contract against the United States, upon at least an initial inquiry, would be a claim within this Court's jurisdiction under the Tucker Act [28 U.S.C. § 1492 (2000) ]." Pls.' Mem. at 1–2. Plaintiffs further assert that this court may exercise jurisdiction and order the requested equitable relief because "the Tucker Act itself directly contemplates equitable relief in some circumstances." *Id.* at 2. Referring specifically to subsection (a)(2) of the Tucker Act,[3] *id.*, plaintiffs argue that "this [c]ourt's specific statutory jurisdiction would seem to cover the relief" that plaintiffs seek, *id.* at 3. Moreover, plaintiffs contend, the case law indicates that "this [c]ourt can use equitable

procedures to arrive at a money judgment and still be within its jurisdiction." *Id.* (citing *Pauley Petroleum, Inc. v. United States*, 219 Ct.Cl. 24, 591 F.2d 1308, 1314–17 (1979) (in which the Court of Claims reasoned that, because it could exercise equitable powers as an incident of its general jurisdiction, jurisdiction existed to hear a rescission claim by lessees of federal offshore lands seeking return of approximately $73 million in bonus payments and rental fees); *Minnesota v. Heckler*, 718 F.2d 852, 858 (8th Cir.1983) (noting that "[s]ince 1972, the Claims Court ... can grant limited equitable relief collateral to a monetary award in order to resolve an entire controversy"); and *Emery Worldwide Airlines, Inc. v. United States*, 47 Fed. Cl. 461, 468 (2000) (stating that "[o]ur equity jurisdiction over this type [Contract Disputes Act, 41 U.S.C. § 609(a)(1) (2000) ] of subject matter is a fairly recent development")).

Defendant argues that "[t]his [c]ourt [d]oes [n]ot [p]ossess [j]urisdiction [t]o [e]ntertain [a]lleged [b]reaches [o]f [s]ettlement [a]greements [e]ntered [i]nto [p]ursuant [t]o Title VII [c]ases." Defendant's Response in Opposition to Plaintiffs' Motion for Reconsideration of This Court's June 19, 2003 Order Transferring the Case to the United States District Court (Def.'s Resp.) at 2. Defendant challenges the district court's reliance on the *Kokkonen* case, asserting that "*Kokkonen* has not been applied in cases involving Title VII settlement agreements where the Federal Government was a party." *Id.* at 3. Specifically addressing the statement in *Kokkonen* that "[a]bsent such action [i.e., that the federal district court incorporates the settlement agreement in its dismissal order], however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction," 511 U.S. at 382, 114 S.Ct. 1673, defendant contends that even if *Kokkonen* were applicable, the independent basis for federal juris-

---

3. Subsection (a)(2) of the Tucker Act provides:

   To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

   28 U.S.C. § 1491(a)(2).

diction would be Title VII itself. Def.'s Resp. at 4.

Defendant also challenges the district court's reliance on the Fifth Circuit's opinion in *Langley* for the proposition that certain Title VII settlement agreement cases should not be heard by the district court. *Id.* at 5. Pointing out that the *Langley* decision "did not involve the Federal Government and [the United States Court of Federal Claims] has not followed its holding," *id.*, defendant observed that the Fifth Circuit "has found that the district court [does] possess jurisdiction to consider the breach of a Title VII settlement agreement when [the settlement agreement] was reached as part of the [Equal Employment Opportunity Commission's] conciliation process," *id.* at 5 n. 3 (citing *EEOC v. Safeway Stores, Inc.*, 714 F.2d 567 (5th Cir.1983) (*Safeway Stores* )). Citing cases in this court and others that have not analyzed the legal significance of the difference between settlement agreements entered into pursuant to an administrative proceeding and settlement agreements entered into during the litigation phase of Title VII cases, but which have concluded, nonetheless, that Title VII settlement agreements are enforceable in federal district court, defendant suggests that the distinction between the types of settlement agreements drawn by the district court in its Transfer Opinion is an immaterial one. *Id.* at 5–7 (citing *Fausto v. United States*, 16 Cl.Ct. 750 (1989) and *Mitchell v. United States*, 44 Fed.Cl. 437 (1999)).

Defendant adds that, even if this court could entertain plaintiffs' claims that the government breached the Settlement Agreements, the relief that plaintiffs seek is not the type of relief available in this court. *Id.* at 7. Noting first that the Settlement Agreements "merely entitle[ ] plaintiffs to information" concerning the date and time of a civil service exam, defendant asserts that plaintiffs have failed to identify a substantive right entitling them to the claimed money damages and, thus, have failed to invoke the jurisdiction of this court. *Id.* at 8–9. Defendant further asserts that this court lacks jurisdiction to provide plaintiffs with the equitable relief they seek-specifically, judicial instatement to the United States Postal Service and retroactive pay equal to what plaintiffs would have earned had they taken and passed the first civil service exam administered since the execution of the Settlement Agreements—because the Tucker Act limits the court's jurisdiction to "directing *restoration* to [an] office or position" and requires that any award of equitable relief must be "an incident of and collateral to" the court's judgment. *Id.* at 10–11 (quoting 28 U.S.C. 1491(a)(2)).

■ The Tucker Act states:
The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The statute is purely a jurisdictional one. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). "[I]t does not create a[ ] substantive right enforceable against the United States for money damages" but confers jurisdiction upon this court when a claimant establishes that a substantive right of recovery exists. *Id.; see also United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (same); *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1007–1009 (1967) (same). To invoke jurisdiction under the Tucker Act, a plaintiff must identify an express or implied contract, a constitutional provision, a statute, or a regulation that provides a separate substantive right to money damages against the United States. *Tippett v. United States,* 185 F.3d 1250, 1254–55 (Fed.Cir.1999); *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998); *Hamlet v. United States,* 63 F.3d 1097, 1101 (Fed.Cir.1995); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983).

■ Here, plaintiffs, Compl. ¶¶ 3–4, and the transferring district court, Transfer Opinion at 6, rely on the Settlement Agreements as the source of plaintiffs' substantive right to money damages against defendant to invoke the jurisdiction of this court. To de-

termine whether the Settlement Agreements "create a[ ] substantive right enforceable against the United States for money damages," *Testan,* 424 U.S. at 398, 96 S.Ct. 948, the court must examine the Settlement Agreements.

The Settlement Agreements reflect the agreement between plaintiffs and the USPS "to compromise the [ ]captioned civil action[s]." Compl. Ex. 1 at 1; Compl. Ex. 2 at 1. Plaintiffs specifically agreed "to waive any and all claims against the [USPS], and release the [USPS] ... from all liability for any claims arising out of any of the facts alleged in their Complaint." Compl. Ex. 1 ¶ 1; Compl. Ex. 2 ¶ 1. The USPS agreed to pay plaintiffs sums certain and their attorney's fees. Compl. Ex. 1 ¶¶ 2–3; Compl. Ex. 2 ¶¶ 2–3. The USPS also agreed to expunge from plaintiffs' personnel files all references to their firing, agreed that plaintiffs shall have the right to be considered for future employment with the USPS, agreed to notify plaintiffs' counsel of the date and time of the next civil service exam, and required training in the area of discrimination and/or diversity for three named USPS employees. Compl. Ex. 1 ¶¶ 4–6, 9; Compl. Ex. 2 ¶¶ 4–6, 9.

In the Complaint before the court, plaintiffs allege that the USPS has failed to provide the promised notice. Compl. ¶¶ 4, 10–13. For that breach, plaintiffs seek monetary and equitable relief. *Id.* at 3. Specifically, plaintiffs request "compensatory [damages], in an amount equal to what the plaintiffs would have earned had they become employed by the Post Office as if they had taken and passed the first exam in question, and incidental damages, attorneys fees, costs, [and] all recoverable interest." *Id.* Plaintiffs also request "any other relief this Court deems fair and just, including all appropriate equitable orders of instatement, future notice, test access, [and] front pay." *Id.*

Whether this court has jurisdiction to hear cases involving settlement agreements reached during litigation of Title VII cases is the threshold issue for consideration. The court first examines the principal authorities, specifically the *Kokkonen* and *Langley* cases,

on which the district court relied in transferring this case back to the court.

In *Kokkonen,* the Supreme Court stated that "[e]nforcement of [a] settlement agreement ... is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." 511 U.S. at 378, 114 S.Ct. 1673. The facts underlying the *Kokkonen* decision are instructive in determining its applicability to this case. The *Kokkonen* case arose out of an insurer's termination of its general agency agreement with an insurance agent. *Id.* at 376, 114 S.Ct. 1673. After removal from state court on the basis of diversity jurisdiction, the district court held trial on the parties' claims and counterclaims. *Id.* Following closing arguments at trial, the parties settled. *Id.* On subsequent motion to enforce the settlement agreement, the district court determined that it had an "inherent power" to enter an enforcement order, and the Ninth Circuit affirmed the decision. *Id.* at 377, 114 S.Ct. 1673. On petition for certiorari, however, the Supreme Court reversed and remanded the case on the ground that, in the absence of an express retention of the court's jurisdiction in the settlement agreement, the "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 381–82, 114 S.Ct. 1673.

Unlike the case before this court, *Kokkonen* did not involve Title VII discrimination claims in particular or even federal question jurisdiction. Nor was the government a party. On its facts, *Kokkonen* is readily distinguishable from this case and does not require a decision that this court, and not the district court, has jurisdiction of plaintiffs' claims.

The court now considers whether Title VII provides the independent basis for federal jurisdiction required by *Kokkonen.* This particular issue was examined in the *Langley* decision upon which the district court relied in its transfer opinion.

In *Langley,* the Fifth Circuit squarely addressed the issue of whether a federal court has jurisdiction over an action for breach of a settlement agreement " 'merely by virtue of having had jurisdiction over the case that

was settled.'" *Langley,* 14 F.3d at 1074 (quoting *McCall–Bey v. Franzen,* 777 F.2d 1178, 1185 (7th Cir.1985)). In *Langley,* a professor filed a motion in district court seeking enforcement of the parties' agreement to settle the professor's Title VII discrimination claims against the university for which she had worked. 14 F.3d at 1071–72. Challenging the district court's jurisdiction to enforce the settlement agreement, the university appealed the decision issued by the district court after a bench trial. *Id.* at 1072. Distinguishing its holding in *Safeway Stores* that "federal courts have jurisdiction over suits to enforce Title VII conciliation agreements,"[4] 714 F.2d at 571–72, the Fifth Circuit declined to find in *Langley* that the district court had subject matter jurisdiction "to enforce settlement agreements ending discrimination disputes after a lawsuit has been filed." 14 F.3d at 1073. Moreover, the Fifth Circuit found no "'inherent power ... to enforce an agreement settling litigation pending before the court.'" *Id.* at 1073 (quoting *In re Corrugated Container Antitrust Litig.,* 752 F.2d 137, 142 (5th Cir.1985)). Rather, the Fifth Circuit reasoned that the professor's "action to enforce the settlement agreement [was] tantamount to an action for 'breach of contract remediable under state but not federal law ... since the parties [were] not of diverse citizenship.'" *Id.* at 1074 (quoting *McCall–Bey,* 777 F.2d at 1185). The Fifth Circuit concluded that "once a court dismisses an action with prejudice because of a settlement agreement, and the agreement is neither approved of nor incorporated by the court in its ... [dismissal] order and the court does not indicate any intention to retain jurisdiction, an action to enforce the settlement agreement requires federal jurisdiction independent of the action that was settled." *Id.*

While informative, the Fifth Circuit's decision in *Langley* is not controlling precedent here. The court continues its consideration of the jurisdiction issue by examining authority in this court and its predecessor, the Claims Court.

In *Fausto v. United States,* 16 Cl.Ct. 750, 750–51 (1989), the Claims Court, this court's predecessor, considered an action by a plaintiff seeking to enforce a settlement agreement that resolved his Title VII discrimination claim against the United States Department of Agriculture. Noting that "Title VII of the Civil Rights Act ... is the comprehensive, exclusive, and preemptive remedy for federal employees alleging discrimination," *id.* at 752–53, the Claims Court stated that "when Title VII affords relief, the civil rights law precludes other legal actions elsewhere for the same claim," *id.* at 753. The Claims Court further stated that "[t]his court cannot assume jurisdiction to review a Title VII settlement—jurisdiction granted by Congress to the federal district courts." *Id.* Finding plaintiff's settlement agreement to be "the direct result of his discrimination claim," the Claims Court concluded that the matter was an action under Title VII rather than a contract action covered by the Tucker Act. *Id.*

In *Lee v. United States,* 33 Fed.Cl. 374 (1995), the Court of Federal Claims considered an action by a federal employee against the National Institutes of Health alleging breach of the parties' settlement agreement resolving the employee's Title VII claims of race discrimination. *Id.* at 376. The court ordered the dismissal of certain claims in plaintiff's complaint that asserted new Title VII violations by her employer on the ground that exclusive jurisdiction to hear such claims rests with the federal district courts. *Id.* at 378–79. The court then conducted a further analysis of the portion of plaintiff's complaint which sought enforcement of the agreement settling her earlier Title VII discrimination claims. *Id.* at 379–80. That analysis, the court explained, requires an examination of "whether [an] asserted breach of an agreement settling a job discrimination complaint against the United States amounts to an 'action or proceeding' under Title VII—over which the United States Court of Federal Claims lacks jurisdiction—or amounts to a contractual action within the Court's Tucker Act jurisdiction." *Id.* at 379.

---

4. Conciliation is one of the mechanisms provided in the administrative structure of the Equal Employment Opportunity Commission for the settlement of disputes prior to the filing of suit by an aggrieved party. *Safeway Stores,* 714 F.2d at 572.

Citing two earlier opinions of this court in which the issue had been addressed, specifically, *Fausto,* 16 Cl.Ct. 750, and an unpublished decision in *Bowen v. United States,* No. 93–456C, slip op. (Fed.Cl. Aug. 3, 1994), which followed the Claims Court's ruling in *Fausto,* the *Lee* court noted the factual similarity between the facts before it and the facts of *Fausto. Id.* at 379. The court also reviewed several cases "holding that federal district courts possess jurisdiction over actions to enforce agreements settling discrimination claims brought before administrative agencies." *Id.* at 379–80 (citing *Brewer v. Muscle Shoals Bd. of Educ.,* 790 F.2d 1515, 1519 (11th Cir.1986)); *Eatmon v. Bristol Steel & Iron Works, Inc.,* 769 F.2d 1503, 1508, 1511 (11th Cir.1985); *Robles v. United States,* No. 84–3635, 1990 WL 155545, at *6 (D.D.C. July 20, 1990); *cf. Morris,* 39 F.3d at 1111–12 n. 4 ("find[ing] no suggestion that Congress intended to confer federal question jurisdiction over contract disputes arising out of private settlements [as distinguished from settlements involving administrative agencies]" in Title VII cases). Persuaded by the reasoning in *Fausto* to hold that "the legislative assignment of Title VII actions to federal district courts precluded the assumption of jurisdiction by the United States Court of Federal Claims," the *Lee* court concluded that it lacked jurisdiction to hear the claim for breach of a Title VII settlement agreement. *Id.* at 380.

Similarly, in *Mitchell v. United States,* 44 Fed.Cl. 437 (1999), this court declined to hear plaintiff's claim of breach of his Title VII settlement agreement. *Id.* at 439. The court stated that this court's jurisdiction to hear certain claims, including contract claims, "may be pre-empted in situations where Congress has provided a comprehensive remedy elsewhere," such as challenges to plea bargains and claims for back pay under the Civil Service Reform Act. *Id.* Noting the congressionally-defined "comprehensive and exclusive statutory scheme . . . [to] redress discrimination claims" under Title VII of the Civil Rights Act, the court determined that it "could not entertain a claim alleging a breach of an agreement settling an employment discrimination suit." *Id.*

This court has consistently held that it lacks jurisdiction to hear claims alleging the breach of a Title VII settlement agreement due to the comprehensive statutory scheme established under Title VII of the Civil Rights Act. The court's view remains the same here. Nonetheless, in light of the transfer back to this court from the district court, the court further examines plaintiffs' specific claims alleging breach of their Settlement Agreements to determine if the claims could be viewed as contract actions for money damages contemplated by the Tucker Act.

C. Plaintiffs' "Compensatory" Claims Are Not Remediable Under the Tucker Act

Plaintiffs' Settlement Agreements provided for the payment of certain monetary damages and attorney's fees. Compl. Ex. 1 ¶¶ 2–3; Compl. Ex. 2 ¶¶ 2–3. Plaintiffs do not allege that they were not paid in accordance with the terms of the Settlement Agreements. Rather, plaintiffs claim that, in violation of the express terms of the Settlement Agreements, they were not informed, through their counsel of record, of the date and time for the next civil service examination. *Id.* ¶¶ 10–12. The damages that plaintiffs now seek as a result of that alleged breach are "compensatory, in an amount equal to what the plaintiffs would have earned had they become employed by the Post Office as if they had taken and passed the first exam in question." Compl. at 3.

The Federal Circuit has stated that, in order to invoke this court's jurisdiction, a plaintiff's "claim must . . . be for money." *New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1556 (Fed.Cir.1997). The Supreme Court has explained that the claim presented must be for "actual, presently due money damages from the United States." *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). It is not simply enough, however, for plaintiffs to present a claim for money. To determine whether plaintiffs' breach of contract claim falls within this court's jurisdiction, the court must consider whether plaintiffs have established that a "substantive right enforceable against the United States for money damages" ex-

ists. *Testan,* 424 U.S. at 398, 96 S.Ct. 948. The alleged substantive right must be of the type that "can be fairly interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S.S. Corp.,* 372 F.2d at 1009. Here, even though defendant's alleged failure to provide notice to plaintiffs through counsel of the date and time of an examination administered to assess potential civil service employment would constitute a violation of the terms of the Settlement Agreements, that identified "substantive right" to notice cannot, in the view of this court in the light of its understanding of cases interpreting the Tucker Act, be "fairly interpreted" as requiring the government to pay money for the "damage sustained." *Id.* Having failed to establish a "substantive right" of recovery against the United States for money damages, *Testan,* 424 U.S. at 398, 96 S.Ct. 948, plaintiffs cannot avail themselves of the jurisdiction of this court to obtain "compensatory" damages, Compl. at 3.

To award the other relief that plaintiffs seek-judicial installation into positions of employment that plaintiffs allege they would have obtained had they received notice of the exam and equitable money damages for pay plaintiffs allege they would have earned in the those positions, would require the court to grant relief solely on equitable grounds. While plaintiffs have correctly pointed out that the court has jurisdiction to provide some equitable relief, *see* Pls.' Mem. at 2–3, that authority is limited as follows:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.

28 U.S.C. § 1491(a)(2). Under the statute, the court may "issue orders directing *restoration* to [an] office or position" or "*placement* in appropriate duty ... status." *Id.* (emphasis added). This court's authority to issue such orders, however, is limited by

"[t]he established rule ... that one is not entitled to the benefit of a position until he has been duly appointed to it." *Testan,* 424 U.S. at 402, 96 S.Ct. 948 (citing *United States v. McLean,* 95 U.S. 750, 24 L.Ed. 579 (1878) and *Ganse v. United States,* 180 Ct.Cl. 183, 376 F.2d 900, 902 (1967)). Plaintiffs here have not undergone the selection process for employment with the USPS. In fact, it is the lack of an opportunity to participate in the selection process for employment that forms the basis for plaintiffs' complaint. Plaintiffs' claims for judicial installation into jobs they allege they would have earned and their claims for the pay corresponding to those positions do not constitute equitable claims that are, as required by the statute, "an incident of and collateral to" a judgment. *See* 28 U.S.C. § 1491(a)(2). Rather, plaintiffs expressly seek judgment for their equitable claims.

The law is well-settled that this court "does not have general equitable powers." *Doe v. United States,* 372 F.3d 1308, 1313–1314 (Fed.Cir.2004) (stating that, in determining whether a claim falls within the scope of the Tucker Act or the Little Tucker Act, "[w]hat matters is whether the request for relief is, on its face or in substance, a request for money damages as opposed to equitable relief"); *see Anderson v. United States,* 59 Fed.Cl. 451, 456 (2004) (stating that the court "lacks general authority to grant relief, monetary or otherwise, on purely equitable grounds" (citing *Bowen v. Massachusetts,* 487 U.S. 879, 893–94, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) and *Glidden Co. v. Zdanok,* 370 U.S. 530, 557, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962))), *appeal docketed,* No. 04–5104 (Fed. Cir. June 2, 2004); *see also First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279, 1294 (Fed. Cir.1999) (stating that the Court of Federal Claims " 'cannot grant nonmonetary equitable relief such as an injunction, a declaratory judgment or specific performance' " (quoting *Quinault Allottee Ass'n v. United States,* 197 Ct.Cl. 134, 453 F.2d 1272, 1274 n. 1 (1972))); *Lion Raisins, Inc. v. United States,* 51 Fed. Cl. 238, 244 (2001) (stating that the Court of Federal Claims " 'may exercise equitable powers as an incident to our general jurisdiction, for example, reforming a contract and

enforcing it as reformed in an action at law. But our general jurisdiction under the Tucker Act does not include an action for 'specific equitable relief.'...'" (quoting *Carney v. United States*, 199 Ct.Cl. 160, 462 F.2d 1142, 1145 (1972))). Accordingly, this court lacks jurisdiction to grant the equitable relief plaintiffs seek.

## III. Conclusion

For the foregoing reasons, the court determines, on reconsideration, that it does not possess jurisdiction to hear plaintiffs' claims.[5] "In the interest of justice," the court TRANSFERS this action back to the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1631.[6]

IT IS SO ORDERED.

---

**5.** A final decision of the United States Court of Federal Claims is appealable to the United States Court of Appeals for the Federal Circuit. 28 U.S.C. § 1295(a)(3) (2000). Also, the decision of a district court either granting or denying a motion to transfer an action to the Court of Federal Claims is also appealable to the Court of Appeals for the Federal Circuit. 28 U.S.C. § 1292(d)(4)(B) (2000).

**6.** As the Federal Circuit recently observed in *Doe*, 372 F.3d at 1312, Congress has waived sovereign immunity for certain actions against the United States. Claims for monetary relief may be asserted in the Court of Federal Claims under the Tucker Act and in federal district court under the Little Tucker Act. *Id.* "[F]or cases encompassed within the judicial review provisions of the APA [Administrative Procedure Act], 5 U.S.C. §§ 701–06 [ (2000) ]," jurisdiction lies in the district courts. *Id.* at 1312 (citing *Bowen*, 487 U.S. at 891–92, 108 S.Ct. 2722). Under the APA, a district court may exercise jurisdiction in a nonstatutory review action only if the claim is for "relief other than money damages," 5 U.S.C. § 702, and there is "no other adequate remedy in a court," 5 U.S.C. § 704. *Id.*